# In re Miguel DEVISON-Charles, Respondent

## File A45 382 757 - Oakdale

*Decided September 12, 2000*
*Decided January 18, 2001*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An adjudication of youthful offender status pursuant to Article 720 of the New York Criminal Procedure Law, which corresponds to a determination of juvenile delinquency under the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031-5042 (1994 & Supp. II 1996), does not constitute a judgment of conviction for a crime within the meaning of section 101(a)(48)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A) (Supp. IV 1998).

(2) Under New York Law, the resentencing of a youthful offender following a violation of probation does not convert the youthful offender adjudication into a judgment of conviction.

Pro se[1]

Jerry A. Beatmann, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; SCIALABBA, Vice Chairman; HEILMAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, ROSENBERG, MATHON, GUENDELSBERGER, JONES, GRANT, MOSCATO, and MILLER, Board Members.[2]

GRANT, Board Member:

In a decision dated September 28, 1999, an Immigration Judge found the respondent subject to removal pursuant to section 237(a)(2)(B)(i) of the

---

[1]The record reflects that the respondent's counsel failed to file a notice of entry of appearance, although he continued to represent the respondent on appeal. We will therefore send a courtesy copy of this decision to respondent's counsel.

[2]Fred W. Vacca, Board Member, participated in the deliberations concerning this case, but retired prior to the issuance of the final decision. Noel A. Brennan, Cecelia M. Espenoza, and Juan P. Osuna, Board Members, did not participate in the decision in this case.

Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(B)(i) (Supp. IV 1998), as an alien convicted of a controlled substance violation, found him ineligible for relief from removal, and ordered him removed from the United States to the Dominican Republic. The respondent has appealed from that decision. The appeal will be sustained and the removal proceedings will be terminated.

## I. BACKGROUND

The respondent, a native and citizen of the Dominican Republic, was admitted to the United States on or about April 29, 1996, as a lawful permanent resident. On January 13, 1999, the Immigration and Naturalization Service issued a Notice to Appear (Form I-862) alleging that the respondent had been convicted of attempted criminal possession of a controlled substance in the third degree, in violation of sections 110 and 220.16 of the New York Penal Law. The respondent denied both the allegation that he had been convicted and the charge of removability. He requested that the charges against him be dismissed and that the proceedings be terminated.

The respondent asserted that he was a youthful offender rather than a convicted criminal. He submitted certified court records to establish that he was adjudicated a youthful offender under Article 720 of the New York Criminal Procedure Law.[3] The records reflect that on August 20, 1992, the respondent pled guilty to attempted possession of a controlled substance in the third degree. At the time of sentencing on October 6, 1992, the respondent was adjudicated a youthful offender in the Supreme Court of New York, County of New York, and was sentenced to 5 years' probation.[4]

The respondent also submitted a court record entitled "Sentence and Commitment," revealing that on October 13, 1998, after pleading guilty to violating his probation by failing to report to his probation officer, he was resentenced to a 1-year term of imprisonment.[5] In addition, the respondent submitted a record dated April 21, 1999, from the Supreme Court, New York County, certifying the following:

---

[3]We acknowledge the respondent's assertion that the documents relating to his youthful offender adjudication are confidential and unavailable, and that the Service violated the statute by using these records. *See* N.Y. Crim. Proc. Law § 720.35(2) (McKinney 1996). We are not in a position to determine whether such a violation has, in fact, occurred.

[4]The record reflects that on September 1, 1993, the court imposed additional conditions of probation on the respondent, apparently extending the period of probation.

[5]Despite conflicting evidence regarding the respondent's date of birth, neither party contested the Immigration Judge's finding that the respondent was 25 years old on October 13, 1998.

> [I]t appears from an examination of the Records on file in this office, that [o]n 10/6/92 the above named Defendant was adjudicated a Youthful Offender. Further that upon that adjudication, the Defendant was sentenced by the Hon. Franklin Weissberg, a Justice of the Supreme Court to 5 years probation. On 10/15/98 probation was terminated unfavorably & Defendant was resentenced to 1 year NYC Dept of Corrections by the Hon. Renee White.[6]

The Service, relying on the same certified court records, asserted that the respondent was ineligible for youthful offender treatment when he was resentenced in October 1998 because he was 25 years old and had already been adjudicated a youthful offender following a felony conviction. The Service noted that, in resentencing the respondent, the court did not indicate that he was adjudicated a youthful offender. Thus, the Service argued that the respondent's October 13, 1998, resentencing constituted a conviction for attempted criminal possession of a controlled substance in the third degree.

Based on the court records provided, the Immigration Judge found the respondent removable as charged. The Immigration Judge accepted the Service's argument that the respondent was ineligible for youthful offender treatment in October 1998, because he had already been adjudicated a youthful offender following a felony conviction. The Immigration Judge found further that the definition of the term "conviction" at section 101(a)(48)(A) of the Act, 8 U.S.C. § 1101(a)(48)(A) (Supp. IV 1998), gives no effect to state rehabilitative statutes such as the New York youthful offender statute at issue in this case. *See Matter of Roldan*, 22 I&N Dec. 512 (BIA 1999).[7] Thus, he concluded that the respondent's October 13, 1998, resentencing constituted a conviction within the meaning of section 101(a)(48)(A) of the Act.

## II. Issues on Appeal

We must decide whether either the respondent's 1992 youthful offender adjudication or his 1998 probation violation and resentencing constitutes a conviction for immigration purposes. This determination requires us (1) to reevaluate our prior decisions, such as *Matter of De La Nues*, 18 I&N Dec. 140 (BIA 1981) (holding that an adjudication of juvenile delinquency

---

[6]The reference to October 15, 1998, as the date of resentencing appears to be incorrect, because the "Sentence and Commitment" reflects that the respondent was resentenced on October 13, 1998.

[7]We note that the United States Court of Appeals for the Ninth Circuit recently reversed at least certain portions of our decision in *Matter of Roldan*, *supra*. *See Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000). As we have determined that *Matter of Roldan* does not control the outcome of the instant case, the ruling of the Ninth Circuit has no bearing on our decision.

is not a conviction for a crime within the meaning of the Act), and *Matter of Ramirez-Rivero*, 18 I&N Dec. 135 (BIA 1981) (same); (2) to determine whether the New York procedures at issue comport with the federal standard of juvenile delinquency set forth in the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031-5042 (1994 & Supp. II 1996) ("FJDA"); and (3) to decide whether our precedents survive the enactment of the statutory definition of the term "conviction" by section 322(a)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-628 ("IIRIRA").

## III. THE RESPONDENT'S 1992 YOUTHFUL OFFENDER ADJUDICATION

### A. Board Precedent

We begin our analysis with the unstated assumption by the parties in this case that the respondent's October 6, 1992, youthful offender adjudication, by itself, does not constitute a conviction for immigration purposes. The Service has not alleged that the respondent's youthful offender adjudication constituted a conviction for a controlled substance violation, thus rendering him subject to removal under section 237(a)(2)(B)(i) of the Act. Nor did the Immigration Judge make such a finding. Although we agree that the respondent's 1992 youthful offender adjudication does not constitute a conviction for immigration purposes, we consider it appropriate to articulate our reasons for so finding, particularly in light of the recently enacted statutory definition of "conviction" at section 101(a)(48)(A) of the Act.

We have consistently held that juvenile delinquency proceedings are not criminal proceedings, that acts of juvenile delinquency are not crimes, and that findings of juvenile delinquency are not convictions for immigration purposes. *See, e.g.*, *Matter of De La Nues*, *supra* (applying FJDA standards to determine whether an act is a delinquency or a crime); *Matter of Ramirez-Rivero*, *supra* (same); *Matter of C-M-*, 5 I&N Dec. 327, 329 (BIA 1953) (finding that changes in the immigration laws did not affect prior administrative holdings that juvenile delinquency is not a crime); *Matter of F-*, 4 I&N Dec. 726 (BIA 1952) (ruling that an offense committed before the offender's 18th birthday was an act of juvenile delinquency, not a crime); *Matter of A-*, 3 I&N Dec. 368, 371 (BIA 1948) (stating that juvenile delinquency is not a deportable or excludable offense); *Matter of O'N-*, 2 I&N Dec. 319 (BIA, A.G. 1945) (holding that a crime committed by a minor in a foreign jurisdiction need not be considered a crime involving moral turpitude if the minor would have been treated as a juvenile offender under United States law); *Matter of M-U-*, 2 I&N Dec. 92 (BIA 1944) (holding that the respondent's admission of a crime committed at age 15 was an admission of juvenile delin-

quency for which he could not be deported).

We have also held that the standards established by Congress, as embodied in the FJDA, govern whether an offense is to be considered an act of delinquency or a crime. *See Matter of De La Nues*, *supra*. *See generally Matter of Rodriguez-Rodriguez*, 22 I&N Dec. 991 (BIA 1999) (recognizing that removal proceedings are a function of federal law, so application of the relevant federal law is appropriate). The FJDA makes it clear that a juvenile delinquency proceeding results in the adjudication of a status rather than conviction for a crime. *See* 18 U.S.C. §§ 5031-5032. We concur with the established view that juvenile delinquency adjudications are not criminal proceedings, but are adjudications that are civil in nature, wherein the applicable due process standard is fundamental fairness.[8] *See McKeiver v. Pennsylvania*, 403 U.S. 528, 541 (1971); *In re Winship*, 397 U.S. 358, 365-66 (1970); *In re Gault*, 387 U.S. 1, 17 (1967).

## B. New York and Federal Statutes

We find that the New York youthful offender adjudication procedures set forth in Article 720 of the New York Criminal Procedure Law are similar in nature and purpose to the juvenile delinquency provisions contained in the FJDA. Section 720.35(1) of the New York Criminal Procedure Law specifically states that a youthful offender adjudication is not a judgment of conviction for a crime or any other offense. Under the New York statute, the court first determines whether a youth (a person charged with a crime alleged to have been committed when he was at least 16 years old and less than 19 years old) is an "eligible youth," that is, a youth who has not been convicted of certain violent felonies, who has not previously been convicted of and sentenced for a felony, and who has not previously been adjudicated a youthful offender following a conviction for a felony. *See* N.Y. Crim. Proc. Law § 720.10(2) (McKinney 2000). Once the court determines that a youth is an "eligible youth," it proceeds to a more specific determination whether the eligible youth should receive youthful offender treatment. *Id.* § 720.20(1). If the eligible youth is not found to be a youthful offender, he or she remains convicted and is sentenced like any other criminal defendant. *Id.* § 720.20(4).

If the eligible youth is determined to be a youthful offender, however, the court immediately vacates the conviction. N.Y. Crim. Proc. Law §

---

[8]We note the similarity between juvenile delinquency proceedings and removal proceedings. Like juvenile delinquency proceedings, removal proceedings are civil in nature and are not considered a criminal process that may result in punishment. In addition, in both juvenile delinquency proceedings and removal proceedings, the applicable due process standard is fundamental fairness. *See Matter of Barcenas*, 19 I&N Dec. 609 (BIA 1988).

720.20(3). A mandatory vacation of a conviction subsequent to a youthful offender adjudication has the practical and legal effect of a reversal. *See People v. Floyd J.*, 462 N.E.2d 1194 (N.Y. 1994). A youthful offender finding is substituted for the conviction and the youthful offender is then sentenced. *See* N.Y. Crim. Proc. Law §§ 720.10(4), 720.20(3). The youthful offender adjudication, comprised of the youthful offender finding and the youthful offender sentence, is then final. *Id.* § 720.10(6). Once a youthful offender determination has been made, that decision cannot be changed as a consequence of the offender's subsequent behavior. *See People v. Mervin*, 462 N.Y.S.2d 544 (N.Y. Sup. Ct. 1983).

These procedures reflect the core criteria for a determination of juvenile delinquency under the FJDA. The FJDA defines a "juvenile" as a person under 18 years of age, and a "juvenile delinquency" as any federal crime committed by a juvenile. 18 U.S.C. § 5031. Until a person is 21 years of age, he or she can be charged as a juvenile for an offense committed while under 18 years of age. *Id.* Thus, the FJDA applies to any person below the age of 21 who has committed an offense before reaching his or her 18th birthday.

Under the FJDA, following an investigation, either the Attorney General certifies to the district court that federal jurisdiction over the juvenile appears appropriate or the juvenile is surrendered to the state court system. 18 U.S.C. § 5032. If the Attorney General so certifies and the juvenile is not surrendered to the state authorities, he or she generally will be subject to delinquency proceedings. *Id.* However, there are limited circumstances under which the juvenile will be tried as an adult. For example, if a juvenile meets specific age requirements and commits certain listed offenses, the Attorney General may file a motion to transfer so that the Government can proceed against him or her as an adult. *Id.* In determining whether a juvenile should be transferred for criminal prosecution as an adult, the court considers such factors as the age and social background of the juvenile, the nature of the alleged offense, the extent and nature of the juvenile's prior delinquency record, and the nature of past treatment efforts and the juvenile's response to such efforts. *Id.* These factors are similar to the standards employed by the New York courts in determining whether an "eligible youth" qualifies as a "youthful offender." *See People v. Shrubsall*, 562 N.Y.S.2d 290, 292 (N.Y. App. Div. 1990).

We find that the New York procedure under which the respondent was adjudicated a youthful offender in 1992 is sufficiently analogous to the procedure under the FJDA to classify that adjudication as a determination of delinquency, rather than as a conviction for a crime. Both the state and the federal statutes apply similar definitions of youths and juveniles, and both specify that neither a youthful offender adjudication nor a determination of juvenile delinquency constitutes a conviction. Both the state and the federal courts consider similar criteria to determine whether an offender will be

treated as a juvenile or as an adult, and, likewise, both mandate that, in certain circumstances, a youth must be treated as an adult. Once a determination is made to treat the offender as a youthful offender or as a juvenile, the federal and state court records are deemed confidential.

There are, however, certain differences between the New York and the federal procedures. Under the state statute, a youth must be less than 19 years of age, whereas under the federal statute a juvenile must be less than 18 years of age. Moreover, the state court first convicts an offender and then adjudicates his or her status, whereas the federal court adjudicates an offender's status and then initiates the appropriate proceedings, either delinquency proceedings or criminal prosecution.

Nevertheless, the central issue before both the state and federal courts is the offender's status, not his guilt or innocence. Perhaps most importantly, under the New York procedures a conviction precedent to a youthful offender adjudication is vacated, rendering it a nullity. *See People v. Floyd J.*, *supra*. All that is left, as in the federal system, is a civil determination of status, which may not be treated as a conviction under governing law. Applying the FJDA as a benchmark, we find that a youthful offender adjudication under Article 720 of the New York Criminal Procedure Law corresponds to a determination of juvenile delinquency under the FJDA.

## C. Section 101(a)(48)(A) of the Act

The 1996 enactment of section 101(a)(48)(A) of the Act, defining the term "conviction,"[9] requires us to reconsider whether juvenile delinquency and youthful offender adjudications constitute convictions for a crime under the Act. *In Matter of Roldan*, *supra*, and *Matter of Punu*, 22 I&N 224 (BIA 1998), we examined the evolution of the definition of a "conviction" under prior administrative precedents, as well as the legislative history underlying section 101(a)(48)(A). In *Punu*, we determined that a "deferred adjudication" under Texas law constitutes a "conviction" because it meets both prongs of the Act's definition, despite the fact that such an adjudication is not labeled a conviction under state law. *Matter of Punu*, *supra*. In *Roldan*, we held that the expungement of a conviction under an Idaho rehabilitative

---

[9]The definition, enacted pursuant to section 322(a)(1) of the IIRIRA, provides as follows:

The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where —

(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

statute does not alter the status of that conviction for purposes of the Act. *Matter of Roldan*, *supra*. We find that neither these holdings nor the text of the "conviction" definition require a departure from our nearly 6 decades of precedent decisions holding that juvenile adjudications are not convictions for purposes of federal immigration law.

We previously held in *Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988), that a conviction exists where an alien has had a formal judgment of guilt entered by a court or, if adjudication of guilt has been withheld, where the following three-pronged test has been met: (1) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt; (2) the judge has ordered the imposition of some form of punishment, penalty, or restraint on the alien's liberty; and (3) a judgment or adjudication of guilt may be entered if the alien violates the terms of his or her probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the alien's guilt or innocence of the original charge.

Congress determined that the *Ozkok* definition did not sufficiently address cases where a judgment of guilt or imposition of sentence is suspended, conditioned on the alien's future good behavior. H.R. Conf. Rep. No. 104-828, at 224 (1996). For example, the third prong of Ozkok precluded a finding of conviction where an adjudication is "deferred" upon a finding or confession of guilt, and if the alien violates probation, a final judgment of guilt may not be imposed until there is an additional proceeding regarding the alien's guilt or innocence. In order to treat such deferred adjudications as convictions, Congress codified the *Ozkok* definition but eliminated its third prong. *Id.*

The new provision "clarifies Congressional intent that even in cases where adjudication is 'deferred,' the original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of the immigration laws." H.R. Conf. Rep. No. 104-828, at 224; *see also Matter of Roldan*, *supra*; *Matter of Punu*, *supra*. Both the statutory language and the legislative history reveal Congress' clear intent to include deferred adjudications within the definition of the term "conviction."

However, there is no indication that Congress intended to include acts of juvenile delinquency within the meaning of the term "conviction." Congress is presumed to be aware of existing law when it amends a statute. *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 481 (1991). Presumably, Congress was aware of our long-established policy and of the FJDA provisions that maintain a distinction between juvenile delinquencies and criminal convictions. There is no record of an effort or intention on the part of Congress to include acts of juvenile delinquency in this new definition of the term "conviction."

We note that, in another section of the IIRIRA, Congress made a specific reference to juvenile delinquency adjudications that includes a recog-

nition that such adjudications are not "convictions." In section 383 of the IIRIRA, 110 Stat. at 3009-652, Congress amended former section 301(e) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5029, to exclude from the family unity program aliens who have committed acts of juvenile delinquency that, if committed by an adult, would be classified as felony crimes of violence. In other words, if a juvenile commits a certain *type* of felony and is adjudicated a juvenile delinquent rather than convicted of the crime, the juvenile will be excluded from the family unity program as if he or she had been convicted as an adult.

Prior to this amendment, section 301(e) of the Immigration Act of 1990 excluded from the family unity program aliens who had been convicted of *a felony* or three or more misdemeanors. If the term "conviction" were meant to include adjudications of juvenile delinquency, the amendment set forth at section 383 of the IIRIRA would be superfluous: a juvenile adjudicated for any act constituting a felony would be excluded from the program. By enacting a specific disqualification for certain juvenile adjudications and limiting the scope of that disqualification to violent felonies, Congress has recognized, in the same statute containing a revised definition of a "conviction," that adjudications for juvenile delinquency are separate and distinct from criminal convictions. *See* IIRIRA § 383.

Although Congress included certain acts of juvenile delinquency in one section of the statute, it chose not to include such acts within the "conviction" definition. We understand legislative purpose to be expressed through the plain meaning of the words used in a statute considered as a whole. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). The express inclusion of language in one clause or provision of the statute and its absence or exclusion in another clause or provision is to be given effect. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987); *see also Matter of Michel*, 21 I&N Dec. 1101, 1104 (BIA 1998). Accordingly, we hold that our prior administrative rulings on the treatment of juvenile delinquency or youthful offender adjudications are not altered by the enactment of section 101(a)(48)(A) of the Act.

This conclusion is not inconsistent with either *Matter of Punu*, *supra*, or *Matter of Roldan*, *supra*. *Punu* dealt with the issue of deferred adjudication that Congress explicitly addressed in enacting section 101(a)(48)(A). We recognized that the new definition supplanted our ruling in *Matter of Ozkok*, *supra*, and held that a deferred adjudication under Texas law was sufficiently "final" to be counted as a conviction for immigration law purposes. *Roldan* applied the holding of *Punu* to a different form of state rehabilitative proceeding, i.e., expungement. Our consistent policy, expressed in *Ozkok* as well as in *Punu* and *Roldan*, is that a single, federal standard should govern, and thus that the determination of what constitutes a conviction for purposes of federal immigration law should not depend on the classifications assigned by different state laws to adjudications subject to rehabilitative pro-

visions. The pivotal passage of *Roldan* explains the rationale:

> Under [section 101(a)(48)(A)], an alien for whom entry of judgment has been deferred may be found convicted for immigration purposes despite the fact that the state in which his proceedings were held has never considered him convicted. It simply would defy logic for us, in a case concerning a conviction in a state which effects rehabilitation through the technical erasure of the record of conviction, to provide greater deference to that state's determination that a conviction no longer exists. Under either scenario, the state has decided that it does not consider the individual convicted based on the application of a rehabilitative statute.
>
> . . . Congress clearly does not intend that there be different immigration consequences accorded to criminals fortunate enough to violate the law in a state where rehabilitation is achieved through the expungement of records evidencing what would otherwise be considered a conviction under section 101(a)(48)(A), rather than in a state where the procedure achieves the same objective simply through deferral of judgment.

*Matter of Roldan*, *supra*, at 523.

The principal thrust of *Roldan* and *Punu*—to faithfully apply the new statutory definition in a manner that will be consistent across state lines—is consistent with our holding today. We continue to apply a federal standard, analyzing state juvenile or youthful offender proceedings against the provisions of the FJDA.

Furthermore, juvenile delinquency and youthful offender adjudications are not akin to expungement or deferred adjudication procedures. Under the former, proceedings are civil in nature and the adjudication of a person determined to be a juvenile delinquent or youthful offender is not a conviction ab initio, nor can it ripen into a conviction at a later date. In the case of an expungement or deferred adjudication, the judgment in the *criminal* proceeding either starts out as a "conviction" that can be "expunged" upon satisfactory completion of terms of punishment and petition to the court, or as a judgment that is deferred pending similar satisfaction of conditions of punishment. In either case, however, neither expungement nor deferral can be presumed, and the original judgment of guilt may remain, or ripen into, a "conviction" under state law. This is a dispositive difference, because a juvenile adjudication cannot become a conviction based on the occurrence or nonoccurrence of subsequent events.[10] To eliminate these distinctions and overrule our well-established precedents on these issues, we would

---

[10]We noted in *Roldan* that, in general, an original judgment that has been expunged under a rehabilitative scheme "retains its vitality for at least some purpose," including consideration for enhanced penalty provisions in the event of a subsequent conviction. *Matter of Roldan*, *supra*, at 515.

require clearer direction from Congress that it intended juvenile adjudications to be treated as convictions for immigration purposes.

We also do not consider the specifics of the New York procedure in which a youthful offender is first "convicted" and then determined to be eligible for youthful offender status to be sufficiently analogous to an "expungement" to bring it within the scope of *Roldan*. Once the decision to treat an offender as a youthful offender has been made, this "conviction" is automatically vacated. Such mandatory vacation has the practical and legal effect of a reversal. *People v. Floyd J.*, *supra*. Furthermore, the youthful offender finding is static, because it cannot be changed or withdrawn as a result of subsequent behavior. *See People v. Mervin*, *supra*; *People v. Gary O'D.*, 461 N.Y.S.2d 65 (N.Y. App. Div. 1983).

The distinction between a youthful offender adjudication and an expunged conviction is further underscored by comparing the FJDA with the former Federal Youth Corrections Act, ch. 1115, § 2, 64 Stat. 1086 (1950) (codified at 18 U.S.C. §§ 5005-5026 (1982)) (repealed 1984) ("FYCA").[11] Under the FJDA there is only a finding of delinquency, whereas under the FYCA there was an actual criminal conviction. *See Matter of P-*, *supra*; *see also People v. Rivera*, 474 N.Y.S.2d 573 (N.Y. App. Div. 1984). Accordingly, we held in *Matter of Roldan*, *supra*, that convictions set aside pursuant to the FYCA or a comparable state statute were sufficiently analogous to "expungements" and would no longer be given effect in immigration proceedings. Thus, our earlier holdings in *Matter of Zingis*, 14 I&N Dec. 621 (BIA 1974) (ruling that a conviction set aside under the FYCA was considered eliminated for immigration purposes), and *Matter of Andrade*, 14 I&N Dec. 651 (BIA 1974) (holding that a conviction set aside under a state statute comparable to the FYCA was considered eliminated for immigration purposes), were among the case law and administrative rulings that we found to be "no longer controlling." *Matter of Roldan*, *supra*, at 525. Conspicuously, nowhere in *Roldan* in our extended discussion of state and federal rehabilitative provisions did we consider juvenile adjudications to be included in such provisions. We therefore conclude that *Roldan* did not disturb our prior case law regarding juvenile delinquency proceedings.

Accordingly, we return to the basic principle enunciated by this Board nearly 50 years ago, in the wake of the enactment of the Immigration and Nationality Act of 1952, ch. 477, 66 Stat. 163:

> In the cases of persons under 18 years of age who have been convicted as criminals, the provisions of [former] section 212(a)(9) would apply. But as to persons who have

---

[11]The Federal Youth Corrections Act was repealed, effective October 12, 1984, by the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, tit. II, §§ 218(a)(8), 235(a)(1)(A), 98 Stat. 1837, 2027, 2031.

been found to be juveniles and have been treated as juvenile offenders in the disposition of their cases, we find that this provision has no application. We hold that this provision therefore makes no change in the previous administrative holdings that juvenile delinquencies are not considered to be crimes within the meaning of the immigration laws and charges relating to the conviction of or the admission of the commission of crimes are inapplicable in such cases.

*Matter of C-M-*, *supra*, at 329. We therefore reaffirm that an adjudication of youthful offender status or juvenile delinquency is not a conviction for a crime for purposes of the immigration laws.

## IV. THE RESPONDENT'S 1998 RESENTENCING

It is undisputed that on October 13, 1998, the respondent was resentenced to a 1-year term of imprisonment after pleading guilty to violating his probation by failing to report to his probation officer. The Immigration Judge found that the respondent's October 1998 resentencing constituted a "conviction" within the meaning of section 101(a)(48)(A) of the Act. However, resentencing is distinct from the vacation of a conviction. *See generally Matter of Martin*, 18 I&N Dec. 226 (BIA 1982).

Likewise, resentencing of a youthful offender is distinct from the underlying youthful offender adjudication. In *People v. Gary O'D.*, *supra*, the New York Supreme Court, Appellate Division, found that although a trial court was authorized to revoke a youthful offender's sentence of probation and to impose an amended sentence for the offender's probation violations, the court was not empowered to convert a youthful offender adjudication into a judgment of conviction. *See also* N.Y. Crim. Proc. Law § 410.70(5) (McKinney 2000); *People v. Calderon*, 588 N.E.2d 61 (N.Y. 1992). Resentencing of a youthful offender does not disturb the underlying youthful offender adjudication.

In the instant case, the record entitled "Sentence and Commitment" does not indicate whether the respondent was adjudicated a youthful offender or convicted of a crime, precisely because the respondent was neither readjudicated a youthful offender nor convicted of a crime. Accordingly, we cannot find that the respondent's 1998 resentencing constitutes a "conviction" within the meaning of section 101(a)(48)(A) of the Act.

## V. CONCLUSION

Based on the foregoing, we conclude that neither the respondent's 1992 youthful offender adjudication nor his 1998 resentencing constitutes a "conviction" within the meaning of section 101(a)(48)(A) of the Act. There is sim-

ply no evidence that when Congress enacted a statutory definition of the term "conviction," it intended to thwart the federal and state governments from acting as parens patriae in providing a separate system of treatment for juveniles. Accordingly, the respondent's appeal of the Immigration Judge's decision will be sustained and the removal proceedings will be terminated.

**ORDER:** The appeal is sustained and the removal proceedings are terminated.

## BEFORE THE BOARD
(January 18, 2001)

Pro se[1]

Jonathan E. Gradess, Esquire, Manuel D. Vargas, Esquire, Joshua L. Dratel, Esquire, and Laura Johnson, Esquire, New York, New York, for amici curiae.[2]

Barry O'Melinn, Acting Chief Appellate Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; SCIALABBA, Vice Chairman; HEILMAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, ROSENBERG, MATHON, GUENDELSBERGER, JONES, GRANT, MOSCATO, MILLER, BRENNAN, ESPENOZA, and OSUNA, Board Members.

GRANT, Board Member:

In a published decision dated September 12, 2000, we sustained the respondent's appeal from an Immigration Judge's decision finding the respondent removable and ineligible for relief from removal and ordering him removed from the United States to the Dominican Republic. *Matter of Devison*, 22 I&N Dec. 1362 (BIA 2000). We ordered the removal proceedings terminated. The Immigration and Naturalization Service has filed a motion to reconsider. The motion will be denied. The request for oral argument is denied. 8 C.F.R. § 3.2(h) (2000).

A motion to reconsider "shall state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall be supported by pertinent authority." 8 C.F.R. § 3.2(b)(1). In the instant case, the

---

[1]The respondent's counsel failed to file a notice of entry of appearance on appeal. However, a courtesy copy of this decision will be sent to him.

[2]We acknowledge with appreciation the thoughtful arguments raised in the amici curiae's brief.

Service begins by retreating from its own arguments. It retracts two significant assertions that it previously made in this case, namely: (1) that a youthful offender adjudication is not a conviction; and (2) that the respondent was only convicted upon resentencing. It argues that the legal analysis in our prior decision was flawed because it was premised on these two assertions, which the Service now claims are incorrect. The Service offers new legal arguments in support of its changed position and contends that we, too, must reverse our original decision.

We have reviewed the record, our previous decision, and the motion to reconsider. We find that the Service's motion has not set forth any legal or factual error that would convince us to reconsider our prior decision. *See* 8 C.F.R. § 3.2(b). The decision will accordingly remain undisturbed, and the Service's motion will be denied. However, we add the following for purposes of clarification.

The Service asserts that we erred in finding that an adjudication of youthful offender status pursuant to Article 720 of the New York Criminal Procedure Law corresponds to a determination of juvenile delinquency under the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031-5042 (1994 & Supp. II 1996) ("FJDA"), and therefore that such an adjudication is not a conviction for a crime within the meaning of section 101(a)(48)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A) (Supp. V 1999). In essence, the Service offers four reasons for its assertion of error. We will address each in turn.

First, the Service contends that the New York youthful offender procedure parallels the Federal Youth Corrections Act, ch. 1115, § 2, 64 Stat. 1086 (1950) (codified at 18 U.S.C. §§ 5005-5026 (1982)) (repealed 1984) ("FYCA"), not the FJDA. In support of its argument, the Service proposes the following schema: the New York juvenile delinquency procedure in Article 3 of the New York Family Court Act is analogous to the FJDA, whereas the New York youthful offender procedure parallels the FYCA. The crux of its argument is that the youthful offender procedure corresponds to the FYCA because under both the state and federal law a conviction is entered and then set aside. According to the Service, the New York procedure is a rehabilitative statute just like the FYCA, and thus, a youthful offender adjudication constitutes a conviction for a crime under section 101(a)(48)(A) of the Act.

Initially, we observe that one of the legislative models for the now repealed FYCA was the New York Youth Corrections Act, 1974 N.Y. Laws, ch. 652, § 7, which was itself repealed in 1974. *See United States ex rel. Sero v. Preiser*, 506 F.2d 1115, 1118-19 (2d Cir. 1974), *cert. denied*, 421 U.S. 921 (1975); *see also* Wilfred J. Ritz, *Federal Youth Corrections Act: The Continuing Charade*, 13 U. Rich. L. Rev. 743, 780 (1979) (recommending that the FYCA be repealed for the same reasons that the New York Youth Corrections Act was repealed). Thus, both the FYCA and its New

1375

York counterpart have been repealed.

In our prior order, we considered both the FJDA and the FYCA and concluded that the New York procedure is more akin to the FJDA than to the FYCA. We now emphasize that the pivotal difference between the FJDA and the FYCA is that the FJDA prevents the entry of a conviction, whereas the FYCA sets aside a valid conviction.

Under the operative provision of the FJDA, 18 U.S.C. § 5032, the offender's status as a juvenile offender is determined prior to trial and conviction. By contrast, under the operative provision of the FYCA, 18 U.S.C. § 5021, a youthful offender was tried, convicted, and sentenced. After the entry of a conviction, *if the offender satisfied the requirements of his sentence*, his conviction could be set aside.[3]  The FYCA provided federal judges with new alternative sentencing options, including committing the youth for treatment or placing him on probation. If the youthful offender responded to treatment and established rehabilitation, the offender could be discharged unconditionally and the conviction could be set aside. Like other rehabilitative statutes, a conviction set aside under the FYCA was conditioned on the offender's future good behavior.

Under the operative provision of the New York youthful offender statute, section 720.20 of the New York Criminal Procedure Law, after an offender is convicted but before sentence is imposed, the court orders a presentence investigation to determine whether the offender qualifies for youthful offender treatment. If the offender is accorded youthful offender treatment, the court *immediately* vacates the conviction and replaces it with a youthful offender finding. Once an offender is determined to be a youthful offender, the conviction must be vacated immediately, unconditionally, and irrevocably. A youthful offender finding and sentence are not deemed to be a judgment of conviction. *See People v. Floyd J.*, 462 N.E.2d 1194 (N.Y. 1994).

As we pointed out unanimously in our prior decision, there is a significant difference between the FYCA and the New York law in that under the FYCA a conviction was set aside on the basis of the offender's subsequent good behavior, whereas under the New York youthful offender procedure the conviction is vacated immediately and unconditionally once the offender is accorded youthful offender treatment. Moreover, the fact that a youthful offender finding and sentence are not deemed to be a judgment of con-

---

[3]Prior to its repeal, 18 U.S.C. § 5021(b) provided as follows:

Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect.

viction makes the New York youthful offender procedure more akin to the FJDA, which prevents the entry of a conviction, than to the FYCA.

In addition to arguing that the New York procedure is analogous to the FYCA, the Service contends that it is unlike the FJDA. In our prior decision we recognized that there are differences between the state statute and the FJDA. Nevertheless, we concluded that the state procedure is sufficiently analogous to the FJDA to classify an adjudication under the New York procedure as a determination of delinquency, rather than as a conviction for a crime. We are not inclined to revisit the issue.

Third, the Service argues that our decision is deficient because it makes no reference to the juvenile delinquency provisions set forth in Article 3 of the New York Family Court Act. We disagree. The Board engages in case adjudication. We decide those issues that lead to the resolution of the cases before us. The instant case pertains to an adjudication of youthful offender status pursuant to Article 720 of the New York Criminal Procedure Law, not to a juvenile delinquency adjudication as defined in section 301.2 of the Family Court Act. Thus, we find it unnecessary and inappropriate to extend our ruling to all related state statutes. Furthermore, the fact that New York law provides for both juvenile delinquency procedures and youthful offender procedures does not alter our prior order, which was reached following careful deliberation.

Finally, throughout its brief the Service contends that our decision "blurs the crucial distinction between juveniles and adults." It states further that "[t]he line between the prosecution of adults and treatment of juveniles is a very clear one." According to the Service, we found that "youthful offenders are *like* juveniles and therefore they are never 'convicted.'" Thus, the Service concludes that our reliance on Board precedent concerning the treatment of juveniles is irrelevant.

The Service evidently misunderstands the discussion in our prior decision regarding the well-recognized distinction between findings of juvenile delinquency and criminal convictions. The issue before us was not whether a youthful offender is or "is *like*" a juvenile or an adult, but whether the New York youthful offender procedure is similar in nature and purpose to the FJDA so as to receive similar treatment under the Act. After careful consideration of Board precedent and recent amendments to the Act, we determined that the New York procedure under which the respondent was adjudicated a youthful offender is sufficiently analogous to the procedure under the FJDA to classify that adjudication as a determination of delinquency, rather than as a conviction for a crime. We find no error in that conclusion. Accordingly, we will deny the motion to reconsider.

**ORDER:** The motion to reconsider is denied.