**Michael Terrance WALLACE, Petitioner,**

v.

**Alberto GONZALES, Attorney General of the United States, Respondent.**

**Docket No. 05–2341–AG.**

United States Court of Appeals, Second Circuit.

Submitted: Sept. 1, 2006.

Decided: Sept. 8, 2006.

---

Earl Ian Laidlow, New York, NY, for Petitioner.

John F. Salan, Assistant United States Attorney (Margaret M. Chiara, United States Attorney, on the brief), United States Attorney's Office for the Western District of Michigan, Grand Rapids, MI, for Respondent.

Before McLAUGHLIN, CABRANES, and SACK, Circuit Judges.

PER CURIAM.

Petitioner Michael Terrance Wallace seeks review of an April 15, 2005 order of the Board of Immigration Appeals ("BIA" or "Board"), *In re Wallace,* No. A 78 424 366 (B.I.A. Apr. 15, 2005), that vacated an order of Immigration Judge ("IJ") Joe D. Miller granting Wallace's application for an adjustment of status pursuant to 8 U.S.C. § 1255, *In re Wallace,* No. A 78 424 366 (Immig. Ct. Napanoch Sept. 8, 2004). He argues that the BIA (1) erred when it considered Wallace's New York State conviction for armed robbery, which resulted in a "Youthful Offender Adjudication," when deciding whether to reverse the IJ's

discretionary decision to grant his application and (2) exceeded its authority by engaging in impermissible factfinding in violation of a regulation requiring the BIA to accept the facts found by an IJ unless they are "clearly erroneous." For the reasons stated below, we deny the petition for review in part and dismiss the petition in part.

## INTRODUCTION

Wallace is a native and citizen of Trinidad, and he entered the United States as a nonimmigrant visitor on August 2, 2000 at the age of sixteen. In December 2000, *Wallace* and two friends robbed a man on a New York subway car. Wallace's friends brandished weapons, and Wallace struck the victim. The three then took the victim's money and MetroCard.[1] Wallace subsequently pleaded guilty to robbery in the first degree, among other crimes, as a result of the subway incident, and he received a "Youthful Offender Adjudication."[2] *See* N.Y.Crim. Proc. Law §§ 720.10–720.35. In addition, Wallace has been arrested for possession of marijuana and for turnstile jumping.

Having been served a Notice to Appear, Wallace conceded removability and was found removable by the IJ. Wallace sought to avoid removal by applying for an adjustment of status pursuant to 8 U.S.C. § 1255. The basis of his application was that his step-father, an American citizen, had filed a petition on his behalf for lawful admission as a permanent resident. *See* 8 U.S.C. § 1151(b)(2)(A)(i) (providing for admission of "immediate relatives" of United States citizens).

■ Adjustment of status is a matter of grace, not of right, and the evaluation of such applications is left to the discretion of the Attorney General. *See, e.g., Bugayong v. INS*, 442 F.3d 67, 71 (2d Cir.2006). The IJ determined that Wallace met the statutory requirements of 8 U.S.C. § 1255 and then, as an exercise of discretion, chose to grant Wallace's application for adjustment of status. When deciding whether to grant the application, the IJ identified the following positive factors that, in his view, outweighed the negative factors in Wallace's criminal record. First, Wallace has "strong family ties" in this country to, among others, his step-father and his mother, who is a lawful permanent resident and a member of the United States Army Reserve. Second, Wallace and his family will suffer hardship if he is removed to Trinidad. Third, the IJ found that Wallace showed "evidence of genuine rehabilitation."

The Department of Homeland Security ("DHS") appealed the IJ's order to the BIA. The BIA reversed the IJ, concluding that because of Wallace's "criminal history, which indicates a propensity to violate the law, he is not desirable as an alien resident in the United States and that, notwithstanding the obvious familial support which he enjoys here, this factor cannot outweigh the negative factor of criminal history." In addition, the Board concluded that the IJ "erred in finding adequate evidence of rehabilitation which would outweigh the negative criminal history," stating that although "the evidence does suggest that [Wallace] has attempted to rehabilitate himself while incarcerated,

---

1. Since the abolition of subway tokens, pre-paid MetroCards have been the only lawful way for passengers to gain access to the New York subway system. *Cf. People v. Owens*, 12 Misc.3d 600, 817 N.Y.S.2d 880 (2006) (describing fraudulent alteration of MetroCards).

2. Notwithstanding his Youthful Offender Adjudication, Wallace was sentenced to one-and-one-third to four years' imprisonment. His hearing before the IJ occurred at the Ulster Correctional Facility in Napanoch, New York.

we cannot find that this outweighs the seriousness of his conviction for robbery and other indications of criminal activity." Accordingly, the BIA vacated the order of the IJ and ordered Wallace removed to Trinidad.

This petition for review followed.

## DISCUSSION

Wallace raises two claims on appeal. First, he argues that the BIA violated his right to due process under the Fifth Amendment when it considered his Youthful Offender Adjudication as a factor relevant to Wallace's application for adjustment of status. Second, he argues that the BIA exceeded its authority under federal regulations when it rejected the IJ's finding that Wallace had demonstrated rehabilitation. As we explain below, each argument is without merit.

Other than to review "constitutional claims or questions of law," *see* 8 U.S.C. § 1252(a)(2)(D), "no court shall have jurisdiction to review ... any judgment regarding the granting of relief under" 8 U.S.C. § 1255, which provides for adjustment of status. *See* 8 U.S.C. § 1252(a)(2)(B)(i); *see also Guyadin v. Gonzales,* 449 F.3d 465, 468–69 (2d Cir. 2006); *Bugayong,* 442 F.3d at 70–73. Accordingly, we cannot review Wallace's claim if he merely challenges how the BIA exercised its *discretion;* he must present a constitutional claim or question of law.

## I. The BIA and IJs May Consider Youthful Offender Adjudications When Evaluating Applications for Adjustment of Status

■ Wallace's first challenge presents a question of law: Whether an official evaluating an application for an adjustment of status pursuant to 8 U.S.C. § 1255 may properly consider the applicant's adjudication as a "Youthful Offender" under New York State criminal law. *See* N.Y.Crim. Proc. Law §§ 720.10–720.35. Citing no authority, Wallace argues that "the spirit and the purpose of the New York Youthful Offender law is defeated if the Board is permitted to use a confidential Youthful offender adjudication when adjudicating adjustment of status applications ...."

Unlike a case where an IJ implements immigration law provisions declaring that certain convictions bar an alien from receiving relief or allow for the imposition of certain penalties, *see, e.g.,* 8 U.S.C. § 1227(a)(2)(A)(iii) (authorizing deportation of an alien convicted of "an aggravated felony at any time"), an IJ reviewing an application for adjustment of status considers whether to perform an act of administrative *grace.* Therefore, while it is relevant that the BIA has determined that Youthful Offender Adjudications do not count as "convictions" for purposes of 8 U.S.C. § 1227, *see In re Devison–Charles,* 22 I. & N. Dec. 1362, 1366–68 (B.I.A.2000) (concluding "that the New York youthful offender adjudication procedures set forth in Article 720 of the New York Criminal Procedure Law" do not create "convictions" justifying deportation),[3] the BIA's

---

**3.** We note that while judgments filed pursuant to New York's Youthful Offender law are not considered criminal convictions for purposes of immigration law, not all state law provisions adjudicating offenses committed by juveniles differently than those committed by adults foreclose the use of juvenile offenses to justify deportation orders pursuant to 8 U.S.C. § 1227. *See, e.g., In re Roldan–San-* *toyo,* 22 I. & N. Dec. 512 (B.I.A.1999) (holding that state law purporting to "expunge" youthful conviction did not eliminate the conviction for purposes of immigration law), *vacated on other grounds sub nom Lujan–Armendariz v. INS,* 222 F.3d 728 (9th Cir.2000); *see also In re Salazar–Regino,* 23 I. & N. Dec 223, 227 (B.I.A.2002) (reaffirming *Roldan–Santoyo* and rejecting rule of *Lujan–Armendariz* for

holding in *Devison–Charles* is not dispositive here.

Indeed, although our research has not revealed a precedential opinion of the Board directly on point, BIA practice suggests that the Board believes juvenile offenses not counting as "convictions" under the immigration law may nonetheless be considered when determining whether an alien merits discretionary relief. *See, e.g., In re Mendez–Moralez,* 21 I. & N. Dec. 296, 301 (B.I.A.1996) (stating that factors relevant to grant of discretionary relief include, *inter alia,* "the existence of a criminal record and, if so, its nature, recency and seriousness, and the presence of *other evidence indicative of an alien's bad character or undesirability* as a permanent resident of this country") (emphasis added); *In re Morales–Castillo,* 2005 WL 3802090 (B.I.A. Dec. 8, 2005) (unpublished) ("recognizing that the respondent has not been convicted of a crime," yet finding "the underlying basis for the [juvenile] respondent's authorized confinement to be a significant adverse factor").[4] Because the purpose of adjustments of status is to provide worthy aliens with special relief, we see no reason to prevent an IJ or the

BIA from considering an applicant's anti-social conduct—whether leading to a conviction, a Youthful Offender Adjudication, or no legal judgment whatsoever—as an adverse factor in evaluating an application for discretionary relief.

A Youthful Offender Adjudication would presumably count less heavily against an applicant than would an adult conviction; however, we have no authority to review the BIA's weighing of matters relevant to the grant or denial of an adjustment of status, which is a decision committed to the discretion of the Attorney General. *See* 8 U.S.C. § 1252(a)(2)(B)(i) ("[N]o court shall have jurisdiction to review ... any judgment regarding the granting of relief under" 8 U.S.C. § 1255.); *id.* § 1255(a) (providing that "[t]he status of an alien ... *may* be adjusted by the Attorney General, *in his discretion* and under such regulations as he may prescribe") (emphases added); *see also Guyadin,* 449 F.3d at 468 (holding that Courts of Appeals lack jurisdiction to review "[a]n assertion that an IJ or the BIA misread, misunderstood, or misapplied the law in weighing factors relevant to the grant or denial of discretion-

---

cases arising outside of the Ninth Circuit). The distinction is that the New York statute, by *immediately* vacating convictions of eligible youths, creates judgments more akin to "juvenile delinquency" findings than to convictions, whereas a *post-hoc* "expungement" of an existing conviction under a rehabilitative statute does not actually mean that a conviction never occurred. *See id.* at 519–28; *Devison–Charles,* 22 I. & N. Dec. at 1368–72; *Uritsky v. Gonzales,* 399 F.3d 728, 734–35 (6th Cir.2005) (distinguishing Michigan "Youthful Trainee" law from New York Youthful Offender law).

4. New York State itself allows, in certain circumstances, the consideration of the *acts underlying* a Youthful Offender Adjudication even when the judgment itself may not be considered. *Compare* N.Y.Crim. Proc. Law § 720.35 ("A youthful offender adjudication is not a judgment of conviction for a crime or

any other offense, and does not operate as a disqualification of any person so adjudged to hold public office or public employment ...."), *with Bell v. Codd,* 57 A.D.2d 814, 395 N.Y.S.2d 16, 17 (1st Dep't 1977) ("This does not mean, however, that in appropriate circumstances the facts underlying a youthful offender adjudication cannot be probed in order to aid in determining the moral fitness of an applicant for a position sought."), *and People v. Cook,* 37 N.Y.2d 591, 595, 376 N.Y.S.2d 110, 338 N.E.2d 619 (1975) ("Since a youthful offender adjudication is not a conviction for a crime, it may not be shown to affect the witness' credibility .... [but] a prosecutor may, for purposes of impeachment, cross-examine a defendant as to a vicious, immoral or illegal act which constituted the basis for a prior youthful offender adjudication.").

ary relief," a claim that "is essentially an argument that the IJ and BIA abused their discretion"); *Higuit v. Gonzales,* 433 F.3d 417, 420 (4th Cir.2006) (holding that petitioner failed to "present a question of law" where he challenged a "discretionary adjustment of status determination" in which "the IJ balanced [petitioner's] positive and negative attributes and did not rule in [his] favor").

Accordingly, because we find no error of law, much less a constitutional violation, in the BIA's consideration of the facts underlying Wallace's Youthful Offender Adjudication as an armed robber in the first degree while deciding whether to grant his application for discretionary relief, we are prohibited by statute from second-guessing the BIA's determination that Wallace's criminal behavior outweighed the equities favoring a grant of relief. Accordingly, we deny the petition for review insofar as it challenges the BIA's consideration of these facts in reaching its discretionary judgment.

## II. The BIA Did Not Exceed Its Regulatory Authority Through Impermissible Factfinding

■ Wallace's second challenge presents an "abuse of discretion" claim disguised as a question of law. *See Guyadin,* 449 F.3d at 468 (holding that "legal alchemy" cannot convert unreviewable claim that BIA abused its discretion into reviewable question of law); *Saloum v. U.S. Citiz. & Immig. Servs.,* 437 F.3d 238, 244 (2d Cir.2006) (rejecting petitioner's effort to "dress up" argument that "the IJ incorrectly weighed the evidence" and that the BIA therefore abused its discretion, a

claim "over which we have no jurisdiction" (internal quotation marks omitted)); *see also Bugayong,* 442 F.3d at 73 (rejecting claim that purported legal errors made by IJ denying adjustment of status sought on the basis of "extreme hardship" allowed Court of Appeals to review the IJ's "exercise of . . . discretion"); *see also Elysee v. Gonzales,* 437 F.3d 221, 224 (1st Cir.2006) (holding that Court of Appeals lacked jurisdiction to review "the balancing of factors engaged in by the IJ" in making discretionary determination).

Here, Wallace argues that the BIA violated 8 C.F.R. § 1003.1(d)(3) [5] when it reversed the IJ's conclusion that Wallace merited an adjustment of status because the factual findings of an IJ may be reversed only when the Board deems them "clearly erroneous." He argues that the BIA's "decision is inadequate because it is silent as to whether or not there was a definite and firm conviction by the Board that the Immigration Judge's decision was clearly erroneous." This argument misreads the regulation. Although factual findings may be reversed by the BIA only if clearly erroneous, the Board reviews discretionary determinations *de novo. See* 8 C.F.R. § 1003.1(d)(3)(ii) ("The Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges *de novo.*").

The BIA concluded that, based on the facts found by the IJ, Wallace was unworthy of the discretionary relief he sought. As noted above, the opinion of the BIA states that because of Wallace's "criminal history, which indicates a propensity to violate the law, he is not desirable as an

---

**5.** On appellate review of an IJ's decision, 8 C.F.R. § 1003.1(d)(3)(i) provides that

[t]he Board will not engage in *de novo* review of findings of fact determined by an immigration judge. Facts determined by

the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous.

alien resident in the United States and that, notwithstanding the obvious familial support which he enjoys here, this factor cannot outweigh the negative factor of criminal history." In addition, the Board concluded that the IJ "erred in finding adequate evidence of rehabilitation which would outweigh the negative criminal history." We decline to construe this statement as an impermissible finding of facts by the BIA. The BIA did not reject any factual determination of the IJ with respect to Wallace's "rehabilitation." Instead, it recounted the IJ's findings and concluded that the IJ incorrectly exercised his discretion in granting Wallace an adjustment of status. Although any reversal by the BIA of an IJ's discretionary determination must involve consideration of the underlying facts, a review of the factual record by the BIA does not convert its discretionary determination as to whether a petitioner warrants an adjustment of status into improper factfinding.

Accordingly, we hold that the BIA did not exceed its authority pursuant to 8 C.F.R. § 1003.1(d)(3) when it reversed the discretionary decision of the IJ, and we dismiss the petition insofar as it challenges a discretionary determination that we lack jurisdiction to review.

### CONCLUSION

In sum, we conclude that (1) IJs and the BIA may consider an applicant's adjudication as a "Youthful Offender" under New York State criminal law when evaluating an application for an adjustment of status pursuant to 8 U.S.C. § 1255 and (2) the BIA's conclusion in this case that the evidence of Wallace's "rehabilitation" as found by the IJ did not overcome Wallace's criminal record—and thus could not justify the IJ's award of adjustment of status—is a discretionary determination that we lack jurisdiction to review. Ac-

cordingly, the petition for review is denied insofar as it challenges the BIA's consideration of Wallace's Youthful Offender Adjudication and dismissed insofar as it challenges the BIA's weighing of factors relevant to the grant or denial of Wallace's application for adjustment of status.