NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1557
_____


CHENG XI LI,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent


_____


On Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A097-391-147
(Immigration Judge: Honorable Steven A. Morley)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 20, 2017

Before:  AMBRO, KRAUSE, and SCIRICA, *Circuit Judges*.

(Opinion Filed: October 26, 2017)


_____

OPINION*
_____


_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Petitioner Cheng Xi Li petitions for review of a final order of removal. Li challenges the decisions of the Immigration Judge ("IJ") and Board of Immigration Appeals ("BIA") dismissing her applications for asylum, withholding of removal, and protection under Article 3 of the United Nations Convention Against Torture. Because substantial evidence supports the IJ's finding that Li did not demonstrate a well-founded fear of future persecution, we will deny the Petition for Review.

**I.**

Petitioner Li is a native and citizen of the People's Republic of China. The IJ set forth the history of this matter in his January 21, 2015 interlocutory decision [AR 352] and June 14, 2016 decision, [AR 67], and therefore we do not repeat it at length.

This Petition arises from Li's application for asylum on the basis of her conversion to Christianity and fear of religious persecution in China.[1] An IJ conducted a hearing on the merits of Li's application on June 23, 2015. Li waived direct examination, therefore the hearing involved a cross-examination of Li and the testimony of two witnesses, Reverend David R. Carey and Reverend Sue Czarnecki. [AR 282-302]. The IJ found Li to be a credible witness but denied her asylum application because she failed to establish

---

[1] Li first entered the United States on August 17, 2003, and has previously filed applications for asylum based on persecution under China's family planning policies and her involvement in the pro-democracy movement. On remand from the United States Court of Appeals for the Eleventh Circuit, the IJ determined that Li was no longer pursuing those claims and addressed only Li's application for asylum on the basis of her fear of religious persecution. [AR 70]. Li did not appeal this determination to the BIA. [AR 4].

a reasonable likelihood of persecution were she to return to China. [AR 80-85]. The BIA affirmed on February 16, 2017, and Li timely filed this Petition for Review. [2]

## II.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252. Venue is proper because the proceedings before the IJ were concluded within this Circuit. 8 U.S.C. § 1252(b)(2). While we normally review the BIA's decision, when the BIA substantially relies on the IJ's reasoning, we may consider both the IJ's and the BIA's opinions. *See, e.g.*, *Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004).

Whether an asylum applicant has demonstrated a well-founded fear of future persecution is a factual question reviewed under the substantial evidence standard. *See Kayembe v. Ashcroft*, 334 F.3d 231, 234 (3d Cir. 2003). Under this "extraordinarily deferential standard," *Abdulrahman v. Ashcroft*, 330 F.3d 587, 598 (3d Cir. 2003), findings will be upheld if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole," *Lin-Zheng v. Att'y Gen.*, 557 F.3d 147, 155 (3d Cir. 2009) (quoting *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). We reverse only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

---

[2] Li does not appeal, and has accordingly waived, the BIA's determinations that: (1) she failed to establish a pattern or practice of persecution of persons similarly situated to her; (2) she is not entitled to protection under the Convention Against Torture; and (3) the forced clandestine practice of Christianity is itself a form of persecution. *See United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

## III.

Under the asylum statute, 8 U.S.C. § 1158, asylum is available at the discretion of the Attorney General for any alien who qualifies as a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A). Past persecution triggers a rebuttable presumption of a well-founded fear of future persecution. *See Singh v. Gonzales*, 406 F.3d 191, 195–96 (3d Cir. 2005). Absent past persecution, the applicant bears the burden to establish a well-founded fear of persecution, "which encompasses threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Yu v. Att'y Gen.*, 513 F.3d 346, 348 (3d Cir. 2008) (internal quotation marks and citation omitted). To demonstrate a well-founded fear of future persecution, an asylum applicant must demonstrate a subjectively genuine fear of persecution and "an objectively reasonable possibility of persecution." *Valdiviezo-Galdamez v. Att'y Gen.*, 663 F.3d 582, 591 (3d Cir. 2011).

An applicant is entitled to withholding of removal if he or she "can satisfy the higher burden of demonstrating that it is more likely than not that life or freedom would be threatened because of a protected ground if he or she were removed." *Li v. Att'y Gen.*, 400 F.3d 157, 162 (3d Cir. 2005). An applicant who cannot demonstrate eligibility for asylum necessarily cannot qualify for withholding of removal. *See Paripovic v. Gonzales*, 418 F.3d 240, 246 (3d Cir. 2005).

Li challenges the IJ's and BIA's determinations that she did not establish a well-founded fear of persecution and raises three issues in her Petition for Review: (1) whether the IJ and BIA erred in predicting Li would not attempt to proselytize were she

4

forced to return to China; (2) whether the BIA engaged in unauthorized factfinding concerning the likelihood of Li being persecuted were she to return to China; and (3) whether agency factfinding errors tainted other findings regarding the degree of harm Li would encounter in China. We address each in turn.

**A.**

We first consider Li's argument that the IJ and BIA erred in finding she would not attempt to proselytize if removed to China. Li alleges that the IJ failed to address her written account of spreading the Gospel (particularly after he found her to be credible), sworn statements "from individuals with first-hand knowledge of Li's proselytizing in the United States," Pet'r's Br. at 22, and a letter from the Brooklyn church Li first attended noting that she "led three persons to listen the Gospel at our church up to now," *id*. at 24.

Although the evidence Li raises supports her claim that she will proselytize upon return to China, nothing in the record as a whole compels this conclusion. The IJ's findings explain that Li "attends church a couple times a month, but does not teach Sunday school, lead adult prayers, act as a lay leader, or even assume lay-leadership roles of an institutional, albeit not necessarily religious nature." AR 81. This conclusion is substantially supported by evidence in the record.

First, neither pastor who testified in support of Li stated she had proselytized in the United States. [AR 282-302]. For example, when asked whether Li engaged in activities of the church, Reverend Czarnecki stated only that "[s]he did some volunteer work for the church, and for our day school." AR 298. Pastor Carey testified he knew Li only as "an acquaintance," AR 289, and stated that his letter describing Li as a "regular

5

participant[] in the life of our church" was written "a while ago," AR 290, and was not based on personal knowledge but "on the prior knowledge of the former pastor" Reverend Czarnecki, AR 291. Furthermore, Li herself admitted to attending church "once every two weeks," AR 271, and spoke only of her intention to preach the Gospel in the future (*i.e.*, upon return to China) during cross-examination. [AR 277].

During Li's hearing, the IJ acknowledged the "documentation in the record with regard to her involvement in church, and her involvement as an active Christian here in the United States." AR 234. The IJ described the exhibits Li submitted in support of her application and referenced the evidence Li points to in her Petition.[3] A more precise analysis in the IJ's oral opinion would have addressed the sworn statements, but an IJ "need not discuss each and every piece of evidence presented by an asylum applicant when rendering a decision, as long as that decision is substantially supported." *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 425 n.10 (3d Cir. 2005). As we have explained, "[w]e will not hold . . . that a [] decision is insufficient merely because its discussion of certain issues could have been more detailed." *Toussaint v. Att'y Gen.*, 455 F.3d 409, 414 (3d Cir. 2006) (internal citation and quotation marks omitted); *see also Sevoian v. Ashcroft*, 290 F.3d 166, 178 (3d Cir. 2002). Here, the record as a whole does not compel a conclusion that Li will preach the Gospel in China, particularly in light of the evidence emphasized by the IJ suggesting a lack of church leadership.

---

[3] The sworn statements from Meihui Huang and Yongchao Liu were submitted as Exhibit R17-T; the sworn statement from Wei Chen was submitted as Exhibit R7-I; and the letter from the pastor of the Brooklyn church Li first attended was submitted as Exhibit R4-D.

6

We also note the record reflects a careful consideration of the country conditions reports. These reports demonstrate that millions of Protestants practice in underground churches in China and local enforcement is inconsistent and sporadic. [AR 79-80]. The U.S. State Department's 2013 International Religious Freedom Report for China, for example, states "[i]n parts of the country, local authorities tacitly approved of or did not interfere with the activities of some unregistered groups." AR 573. And, while in other parts of the country local authorities restrict meetings, confiscate property, and detain worshippers, enforcement primarily focuses on church leaders. [AR 573]. This is particularly true in Fujian (the province where Li was born), where authorities primarily destroy property and target church leaders. [AR 479-483].

To secure asylum, there must be a serious threat to life or liberty. In *Fatin*, we explained the term "persecution" includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," and made clear that persecution refers only to "severe" conduct and "does not encompass all treatment that our society regards as unfair, unjust or even unlawful or unconstitutional." *Fatin v. I.N.S.*, 12 F.3d 1233, 1240 (3d Cir. 1993). As the IJ correctly noted, "isolated incidents that do not result in serious injury do not rise to the level of persecution." *Voci v. Gonzales*, 409 F.3d 607, 615 (3d Cir. 2005).

Thus, the country conditions evidence further supports the IJ's ultimate finding that Li did not demonstrate a well-founded fear of future persecution. As the IJ reasoned, "if this record showed an escalating punishment, from a warning, to a brief detention, to a longer detention, to a reeducation camp where torture is common, the court could

7

conclude that a committed religious follower was at risk of persecution . . . . But that's not the record in this case." AR 84. We therefore hold the IJ's decision supported by substantial evidence.

## B.

We also hold the BIA did not engage in unauthorized factfinding concerning the likelihood of Li's persecution upon return to China. Li argues the only way the BIA could uphold the IJ's decision is to assign the sworn statements and letter from the Brooklyn church "limited or no weight." Pet'r's Br. at 26. And, she contends, "because weighing evidence is an essential aspect of fact-finding, this move by the Board, in an attempt to rehabilitate the IJ's factfinding with factfinding of its own, is an error of law." *Id.*

Contrary to Li's assertion, the BIA's analysis of the IJ's decision does not improperly weigh evidence. Instead, the BIA makes a legal conclusion that the evidence presented by Li did not establish clear error in the IJ's finding. "[A] review of the factual record by the BIA does not convert its discretionary determination as to whether a petitioner warrants [relief] into improper factfinding." *Wallace v. Gonzales,* 463 F.3d 135, 141 (2d Cir. 2006); *see also Jianli Chen v. Holder*, 703 F.3d 17, 23 (1st Cir. 2012) ("Although the BIA may not engage in independent factfinding, it has the prerogative— indeed, the duty—of examining the basis for, and then synthesizing and analyzing, the IJ's findings.").

## C.

Because we find no error in the IJ's factfinding and BIA's decision, we need not address Li's final argument that agency factfinding errors tainted other findings regarding the degree of harm Li would encounter in China.

## IV.

For the foregoing reasons, we will deny the Petition for Review.