NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3308
_____

BIYUN LIU,
Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A087-797-624)
Immigration Judge: Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 1, 2013

Before:  RENDELL, ALDISERT and NYGAARD, Circuit Judges

(Opinion filed:  March 28, 2013)
_____

OPINION
_____

PER CURIAM

Biyun Liu ("Liu") petitions for review of the Board of Immigration Appeals' final

order of removal.  For the reasons that follow, we will deny the petition for review.

Liu was admitted to the United States in September, 2009 on a visitor's visa and

overstayed.  She was served with a Notice to Appear, which charged that she is

removable under Immigration & Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. §

1227(a)(1)(B), for having remained in the United States for a time longer than permitted. These charges have been sustained. On or about February 3, 2010, Liu filed an application for asylum, withholding of removal, and for protection under the Convention Against Torture, in which she claimed that she had been forced to undergo an abortion in Lianjiang County in Fujian in 1999, and now fears persecution in China on the basis of her opposition to its coercive population control policies.

In her statement in support of asylum, Liu explained that she left China in September, 2009. The events which caused her to leave began on January 23, 1999, when she and her husband-to-be, Zhenshun Weng, applied for a marriage certificate. She could not obtain a certificate to marry unless she underwent an abortion. After the abortion, Weng was forced to attend family planning classes and was required to send gifts to family planning officials, according to her statement. She and Weng were finally married on March 25, 1999, and their first daughter was born on February 9, 2000. Liu then hid from family planning officials but Weng was arrested. On April 25, 2000, she was forced to have an IUD inserted and Weng was released but was required to pay a fine. Weng left China and came to the United States in 2000. Liu tried but failed to leave China in 2004. In 2007, she had the IUD removed in a private clinic. Finally, she was able to reunite with her husband in the United States in 2009.

Liu's removal hearing was held in Immigration Court on September 28, 2010. At it, she testified that she left China because she was persecuted by the family planning policy. She testified that she went to register for her marriage certificate on January 23, 1999. On that date, family planning officials discovered that she was pregnant. She was arrested, and taken to Lianjiang County Hospital where she was required to undergo an

2

abortion. Liu became pregnant again in late March, 1999, and the couple's first child was born on February 9, 2000. After her daughter was born, she was required to have an IUD inserted. A month later she went to a private clinic and had it removed, and she stopped going for the gynecological exams that were required by family planning officials. Liu then hid at her mother's house. Eventually, family planning authorities forced her to have another IUD inserted by arresting and detaining Weng. After the IUD was reinserted, Weng left China. Over the next few years, Liu continued going for the required gynecological check-ups. In 2007, she developed an infection and had the IUD removed at a private hospital. She then went into hiding for two years before leaving China for the United States. Liu testified that she feared she would be forced to terminate her current pregnancy and undergo sterilization if she is returned to China.

On cross-examination, Liu testified that she hid for two years at a friend's house before leaving China, but when asked the name of her friend she stated, "I don't know," A.R. 210. Prior to the merits hearing, in support of her case Liu submitted the State Department's 2009 Human Rights Report on China and certain news articles. She also submitted a letter from her husband, in which he corroborated the details provided in her asylum affidavit, and she submitted a letter from her father. When asked by the Immigration Judge whether her husband and father wrote the letters themselves (because the letters were similar both stylistically and substantively), Liu said yes.

On September 28, 2010, the IJ issued an oral decision denying Liu's applications. Specifically, the IJ found that Liu was not credible based on several factors: (1) she gave two different dates regarding when her first pregnancy was discovered (January 23, 1999 and March 15, 1999); (2) she testified that she was pregnant for the second time from late

3

March, 1999 until February 9, 2000 but that would mean that she was pregnant for over 10 months; (3) she gave specific dates in her sworn statement regarding when she went into hiding at her mother's house but at her hearing she could not remember how long she remained in hiding; (4) she indicated that she was subject to a fine in her statement but she did not mention it during her testimony; (5) her demeanor undercut her credibility because there were long pauses before she answered questions and her testimony lacked narrative and was not persuasive; and (6) she did not provide reliable, independent evidence to corroborate her testimony in that her husband who lives in the United States did not testify on her behalf, and the letters from her husband and father were too similar to have been written independently. In addition, the IJ determined that there was nothing in the background material to support Liu's claim that pregnant, unwed mothers in Fujian were required to undergo abortions. The IJ thus concluded that Liu had failed to proffer sufficient credible evidence to meet her burden of proof to establish eligibility for asylum or withholding of removal. The IJ also determined that Liu's torture claim was not credible.

Liu obtained new counsel and appealed to the Board of Immigration Appeals. In her brief on appeal, Liu contended that the IJ's adverse credibility finding was clearly erroneous and should be reversed. Liu then submitted an item titled "Supplement to Appeal Brief," to which she attached new evidence of the birth of her second child, a son born in February, 2011, and additional background information on country conditions in China.

On August 3, 2012, the Board dismissed Liu's appeal, concluding that the IJ's adverse credibility determination was not clearly erroneous, and that the IJ had provided

4

specific and cogent reasons for disbelieving Liu. The Board agreed with the IJ that Liu, when testifying, gave two different dates regarding when her first pregnancy was discovered, and the Board rejected her explanation that, in giving two dates, she was merely referring to two different dates on which she had attempted to register for a marriage certificate. The Board agreed that Liu's testimony concerning her second pregnancy meant that she had been pregnant for over 10 months, which was implausible. The Board agreed that Liu's uncertain testimony about the dates when she hid at her mother's house did not match her asylum statement. The Board agreed that, although Liu had indicated that she was subject to a fine in her statement, she did not mention it during her testimony. The Board noted that Liu could not remember the name of the friend in whose house she was hiding when avoiding the family planning authorities from 2007 until 2009. The Board also credited the IJ's analysis of Liu's demeanor, and agreed with the IJ that Liu did not independently corroborate her claim. The Board agreed that Liu's explanation for why her husband did not appear on her behalf to testify (he was working) was inadequate, and agreed that the letters from her husband and father were suspiciously similar. The Board also upheld the IJ's CAT determination. The Board did not address Liu's supplemental brief and new evidence.

Liu has timely petitioned for review of the Board's decision. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). In her brief on appeal, Liu argues that the IJ's adverse credibility determination is not supported by substantial evidence, and that the Board abused its discretion by "summarily" denying her application for statutory withholding of removal and by "totally bypassing" the issue Liu first raised on appeal of

5

having a well-founded fear of forced sterilization in light of the birth of her second child. See Petitioner's Brief, at 4.

With respect to the IJ's adverse credibility determination, Liu argues that the agency's finding that she gave two different dates regarding when her first pregnancy was discovered is unsupported by the record and entirely without foundation because, when her testimony is read as a whole, it is patently clear that she was only trying to explain that she had attempted to apply for a marriage certificate on two different dates. See id. at 18-20, 22. Liu also argues that a 10-month pregnancy is not humanly impossible, see id. at 24; she did not give "specific dates" in her statement about when she was hiding in her mother's home, see id. at 27; the Board engaged in fact-finding when it determined that she was not credible because she did not remember the name of the friend she stayed with prior to departing for the United States, see id. at 29; and she did in fact mention a fine during her testimony, see id. at 31-33. Liu argues that her long pauses in giving answers to questions were the fault of prior counsel for asking "unfocused open-ended questions," id. at 40, that the IJ was sarcastic and biased, see id. at 44, and that her testimony did not lack a narrative thread, see id. at 48-50. She argues that there is no evidence in the record to support the IJ's conclusion that her husband's and father's letters were "forgeries," see id. at 51-55, and she provided a sufficient explanation for why her husband did not appear at her hearing, see id. at 57.

We will deny the petition for review. When the Board issues a separate opinion, we review the Board's disposition and look to the IJ's decision only insofar as the Board has deferred to it, see Huang v. Att'y Gen. of U.S., 620 F.3d 372, 379 (3d Cir. 2010), but, in Liu's case, the Board relied significantly on the IJ's findings. We will thus review

6

both decisions, see Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). The agency's factual determinations are upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Under this deferential standard of review, we uphold the agency's determination unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Adverse credibility determinations are reviewed for substantial evidence, see Chen, 376 F.3d at 222. We note that the INA provides in pertinent part that "a person who has been forced to abort a pregnancy or to undergo a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion." INA § 101(a)(42)(B), 8 U.S.C. § 1101(a)(42)(B).

Under the REAL ID Act of 2005, there is no presumption of credibility. 8 U.S.C. § 1158(b)(1)(B)(iii). Further, the IJ may assess credibility based on "the totality of circumstances, and all relevant factors," including:

> … the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's … account, the consistency between the applicant's … written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

Id. We have explained that the IJ "alone is in a position to observe an alien's tone and demeanor" and is "uniquely qualified to decide whether an alien's testimony has about it the ring of truth." Lin v. Att'y Gen. of U.S., 543 F.3d 114, 128 (3d Cir. 2008) (quoting Abdulrahman v. Ashcroft, 330 F.3d 587, 597 (3d Cir. 2003)).

7

Based on the "totality of the circumstances" and "all relevant factors," the record does not compel the conclusion that Liu was credible. Even if we harbor doubts about whether Liu actually gave two different dates regarding when her first pregnancy was discovered, A.R. 193 ("I register for – I register – apply for the marriage certificate was in 1999, January 23, and the second time was in 1999, March 15."), the remainder of the IJ's findings are supported by substantial evidence. A ten-month pregnancy is implausible; Liu said in her statement that she hid at her mother's house between February, 2000 and April, 2000, A.R. 461, but she testified that she could not remember how long she was in hiding at her mother's house, A.R. 197; Liu did not mention the fine in her testimony until she was specifically asked about it by the IJ, A.R. 214; a negative inference may be drawn from the fact that her husband, with whom she lives in the United States, went to work instead of testifying in support of her application; the letters from Liu's husband and father, which do corroborate her claim, were nonetheless so similar that her testimony that they were written independently need not be believed;[1] and Liu's testimony overall was indeed hesitant, A.R. 201. We reject as unpersuasive Liu's argument that prior counsel's open-ended questioning caused her demeanor to suffer. We also reject as unpersuasive her argument that the IJ "gloated" over her inability to respond effectively to her counsel's open-ended questions and thus exhibited bias.

Liu argues that the Board impermissibly engaged in fact-finding when it noted that she could not remember the name of the friend in whose house she was hiding before she

---

[1] The IJ used the word "forgeries" to describe the letters, which looked like they were written by the same individual from a common template. The INA makes it unlawful to forge documents for the purpose of obtaining an immigration benefit, see 8 U.S.C. § 1324c, but we do not understand the Board to have upheld a finding that the letters were forgeries. The Board upheld only the finding that Liu's testimony that the letters were independently written was undercut by the similarity in the letters.

departed for the United States, but the Board's mention of the undisputed factual record in providing additional support for the IJ's adverse credibility finding does not mean that it engaged in impermissible fact-finding. See Wallace v. Gonzales, 463 F.3d 135, 141 (2d Cir. 2006) (where Board did not reject any factual determination made by IJ it did not engage in impermissible fact-finding and thereby exceed its authority under 8 C.F.R. § 1003.1(d)(3)).

Accordingly, based on the totality of the circumstances, 8 U.S.C. § 1158(b)(1)(B)(iii); cf. Wang v. Immigration & Naturalization Serv., 352 F.3d 1250, 1259 (9th Cir. 3003) (reviewing court need not agree with every single ground for agency's adverse credibility determination so long as determination is supported by substantial evidence), we are not compelled to conclude that Liu proffered sufficient credible evidence to meet her burden of proof to establish eligibility for relief. The agency properly denied Liu's claims for asylum, withholding of removal, and protection under the CAT.

Last, Liu has argued that the Board completely overlooked the issue she first raised on appeal of having a well-founded fear of forced sterilization in light of the birth of her second child, see Petitioner's Brief, at 62, and the Attorney General has invited us to "partially" remand this matter because the new evidence Liu submitted to the Board with her supplemental brief, which the Board did not address, *could* have been treated by the Board as a motion to remand under 8 C.F.R. § 1003.1(d)(3)(iv). We decline this invitation for a partial remand. The regulation provides that "[a] party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion for remand. If further factfinding is needed in a particular case, the Board may remand

9

the proceeding to the immigration judge or, as appropriate, to the Service." Id. at 1003.1(d)(3)(iv). Liu did not file a motion for remand as required by the regulation and we thus cannot conclude that the Board erred in not addressing the new evidence. Liu may file a motion to reopen, as provided for in 8 C.F.R. § 1003.2(c)(1)-(3), and present her new evidence to the Board in that motion.

For the foregoing reasons, we will deny the petition for review.