05-3915-ag
Noble v. Keisler

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: December 19, 2006          Decided: October 2, 2007
                                    Errata filed: October 26, 2007)

Docket No. 05-3915-ag

--------------------------------------

BRYAN NOBLE,

Petitioner,

- v -

PETER D. KEISLER,

Respondent.[*]

--------------------------------------

Before:   POOLER, SACK, and WESLEY, Circuit Judges.

Petition for review of a decision of the Board of Immigration Appeals vacating an immigration judge's decision granting the petitioner's application for a waiver of inadmissibility under section 212(c) (now repealed) of the Immigration and Nationality Act.

Petition dismissed.

> RUCHI THAKER, Bretz & Coven, LLP (Matthew L. Guadagno, Kerry W. Bretz, and Jules E. Coven, on the brief), New York, NY for Petitioner.

---

[*]  Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney General Peter D. Keisler is automatically substituted for former Attorney General Alberto R. Gonzales as the respondent in this case.

MELISSA A. SWAUGER, Assistant United States Attorney in the Middle District of Pennsylvania (Thomas A. Marino, United States Attorney, on the brief), Harrisburg, PA for Respondent.

SACK, Circuit Judge:

Bryan Noble, a citizen of Jamaica, petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying his application for a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) ("INA").[1]  In re Bryan Noble, No. A 41 651 242 (B.I.A. June 30, 2005) ("BIA Opinion").  The BIA sustained the government's appeal and vacated the decision of Immigration Judge ("IJ") Margaret McManus granting Noble's application.  In re Bryan Noble, No. A 41 651 242 (Immig. Ct. N.Y. City Jan. 15, 2004) ("IJ Decision").

Noble now petitions for review, arguing that the BIA applied an incorrect legal standard, as established by agency regulations, to its review of the IJ's determination that Noble had been rehabilitated subsequent to his extensive history of criminal behavior.  Because we conclude that the BIA did not reject a finding of fact by the IJ that Noble was rehabilitated, but instead evaluated the nature and extent of his rehabilitation as one equity among many in exercising its discretion, we conclude that the petitioner is, in substance, asking us to

---

[1]  Although section 212(c) has been repealed, it nevertheless applies to Noble because he pleaded guilty to his crimes prior to the repeal of this section.  Khan v. Gonzales, 495 F.3d 31, 33 n.1 (2d Cir. 2007) (citing INS v. St. Cyr, 533 U.S. 289, 326 (2001)).

-2-

review an exercise of discretion by the BIA.  We do not have jurisdiction to do so, and we therefore dismiss the petition.

**BACKGROUND**

Noble entered the United States on a visitor's visa in 1982, at the age of twelve.  He became a lawful permanent resident on March 10, 1988.  Soon thereafter, he was arrested for the first time.  He was subsequently arrested on six other occasions.  Most of his arrests were drug-related; all led to criminal proceedings in New York state courts.

The petitioner's legal troubles prompted the initiation of his immigration proceedings and two delays thereof.  Nearly fifteen years after they began, Noble now petitions this Court to review the BIA's denial of discretionary relief from removal.

<u>Noble's Criminal Convictions and Sentences</u>

Noble's first arrest occurred some seven months after he obtained lawful permanent resident status.  He pleaded guilty in 1989 to criminal possession of a controlled substance.  He was sentenced as a youthful offender to five years' probation.

On April 26, 1990, shortly after his probationary sentence was imposed, Noble was again arrested, this time for criminal impersonation.  He pleaded guilty to disorderly conduct for which he was sentenced to pay a fine.

Seven months later, Noble was arrested following a police drug-raid.  At the time of his arrest, he had twenty-one bags of cocaine base ("crack"), individually packaged for sale, at his feet.  On October 30, 1991, before the possession-of-crack

prosecution had been resolved, Noble was arrested in the course of another police drug raid for possession of crack with the intent to sell. At the time of this arrest, Noble also had in his possession a loaded semi-automatic pistol with a defaced serial number. On February 25, 1992, while these two cases were pending, Noble was arrested yet again for possession of crack.

On November 4, 1992, Noble pleaded guilty to the criminal charges arising from his third and fourth arrests and was sentenced, for each crime, to three-and-one-half to ten-and-one-half years' imprisonment, to run concurrently. Noble served twenty-two months' imprisonment for these offenses.

Noble's Removal Proceedings

On August 13, 1993, the INS issued an order to show cause to Noble based on his previous convictions for drug-trafficking crimes.[2] In it, the INS charged Noble with removability under section 241(a)(2)(B)(i) of the INA, 8 U.S.C. § 1251(a)(2)(A)(i) (1994) (current version at 8 U.S.C. § 1227), as an alien convicted of a controlled substance violation, and section 241(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1251(a)(2)(A)(iii) (1994) (current version at 8 U.S.C. § 1227),

---

[2] On March 1, 2003, the Immigration and Naturalization Service was reconstituted as the Bureau of Immigration and Customs Enforcement ("ICE") and the Bureau of U.S. Citizenship and Immigration Services, both within the Department of Homeland Security. See Monter v. Gonzales, 430 F.3d 546, 548 n.1 (2d Cir. 2005). Because Noble's removal proceedings began before this date, we refer to it as the INS in this opinion where appropriate.

-4-

as an alien convicted of an aggravated felony. Noble has never disputed his deportability or removability on these bases.

On January 10, 1995, Noble filed an application for relief under section 212(c). While Noble's section 212(c) hearing was pending, he was arrested a sixth time, this time for selling crack. His deportation proceedings were administratively closed pending a resolution of charges in connection with that arrest. He later pleaded guilty to criminal possession of a controlled substance and was sentenced to a conditional discharge.

Noble's removal hearings were reopened but suspended again after he was arrested a seventh time on February 21, 2000. Noble pleaded guilty to charges of disorderly conduct arising out of a shoplifting incident, was sentenced to a conditional discharge, and was asked, and agreed, to participate in a drug recovery program.

The IJ's Decision

On March 28, 2002, almost a decade after deportation proceedings against him had begun, Noble received a hearing before an IJ to address his section 212(c) application. He and his wife both testified.

Noble recounted his extensive criminal record and admitted to having committed additional drug offenses for which he had not been arrested and, therefore, of which the INS had not been aware. He expressed his regret about that phase of his life and asserted that he had since turned his life around.

Noble's wife testified to Noble's importance to their family as a father, stepfather, caretaker, and breadwinner. She said that, were Noble removed from the United States, the family would no longer be able to afford to pay the mortgage on their home and would therefore be forced to leave it.

Noble also submitted several documents in support of his relief application relating to his marriage and extensive family ties in the United States, his employment record and financial stability, his post-parole record, and his positive influence on his children.

The IJ issued a written decision on January 15, 2004. After balancing the equities in accordance with Matter of Marin, 16 I. & N. Dec. 581 (BIA 1978), she granted Noble a waiver of removal under section 212(c). See IJ Decision at 6-9. She found Noble's testimony to be credible -- his "level of honesty convince[d] [her] that he [had] been forthright in all of his testimony." Id. at 2. The IJ identified several "unusual and outstanding equities" that offset Noble's extensive criminal history, including his family connections to the United States, his positive family relationships, the financial and emotional support he provided to his family, and his steady employment. Id. at 6-9. Addressing the issue of rehabilitation, the IJ noted that Noble had "expressed profound remorse for his criminal convictions and regrets his criminal involvement." Id. at 7. The IJ further found that Noble had "demonstrated a willingness to continue his progress toward a drug-free and crime-free

-6-

lifestyle." Id. at 8. The IJ said: "In light of the for[e]going analysis and [Noble's] remorse for his past actions, the Court concludes that [Noble] has finally demonstrated good efforts at rehabilitation." Id. The IJ concluded that Noble's positive equities outweighed the negative ones and granted Noble's request for a waiver of inadmissibility pursuant to section 212(c). See id. at 9.

The BIA's Opinion

The government appealed the IJ's decision to the BIA. According to the BIA, the "sole question on appeal [was] whether the respondent merit[ed] section 212(c) relief in the exercise of discretion, a matter [the] Board reviews de novo." BIA Opinion at 1. The BIA considered a variety of factors: the seriousness of the criminal charges against Noble; the number of them (including those which he admitted committing but for which he had not been convicted); that "the circumstances under which some of these crimes were committed suggest the possibility that he was willing and able to advance his criminal enterprise by means of violence"; and the fact that the criminal behavior continued after his deportation proceedings began. Id. at 2.

In light of these "significant negative factors," the BIA opined, Noble would be entitled to relief only if he "[came] forward with evidence of unusual or outstanding equities, including proof of genuine rehabilitation." Id. The BIA first acknowledged that some of Noble's positive factors did rise to the level of "unusual or outstanding equities." Id. at 3. The

BIA further noted that Noble had "expressed sincere remorse for his past conduct and . . . testified honestly about that conduct in open court," thereby adhering to the IJ's credibility determination. Id.

On the issue of rehabilitation, however, the BIA observed:

> [R]emorsefulness is not the same as rehabilitation. The fact that the respondent has continued to commit crimes after the commencement of these proceedings and after receiving explicit warnings from the [IJ] about the potential consequences of such conduct frankly leaves us with very serious doubts as to the authenticity of [Noble's] rehabilitation.

Id. After "balancing the various factors in [Noble's] case," including "unusual or outstanding" equities in his favor, "against the adverse factor of his very serious criminal history and [the agency's] reservations as to his rehabilitation," the BIA concluded that it was "constrained to find that a favorable exercise of discretion would not be in the best interests of the United States." Id. The BIA therefore vacated the IJ's decision in relevant part and denied the section 212(c) waiver.

Noble petitions for review.

**DISCUSSION**

I. Jurisdiction

At least in the absence of constitutional or legal issues, we do not have jurisdiction to review final orders of removal against aliens deemed by the BIA to be removable because they were convicted of a specified criminal offense, including,

inter alia, an aggravated felony or controlled substance violation.  See 8 U.S.C. § 1252(a)(2)(C) (precluding jurisdiction where alien is removed after violating 8 U.S.C. § 1227(a)(2)(A)(iii) (aggravated felony) or § 1227(a)(2)(B) (controlled substance offense)).  We also lack jurisdiction to review purely discretionary decisions.  See 8 U.S.C. § 1252(a)(2)(B)(ii).  Section 106 of the REAL ID Act of 2005, however, restored our jurisdiction over "constitutional claims or questions of law."  18 U.S.C. § 1252(a)(2)(D); see Xiao Ji Chen v. Dep't of Justice, 471 F.3d 315, 324 (2d Cir. 2006).

## II.  The BIA's Review of the IJ's Decision

The government seeks dismissal of the petition because, it contends, we do not have jurisdiction to review the BIA's discretionary decision denying a section 212(c) waiver of inadmissibility.  The petitioner does not assert that we have jurisdiction to review the BIA's ultimate conclusion to deny his application, nor could he successfully do so.  See Avendano-Espejo v. Dep't of Homeland Security, 448 F.3d 503, 504 (2d Cir. 2006) (per curiam).  Instead, he contends that the BIA erred on the narrow ground that it improperly applied de novo review to the IJ's rehabilitation determination, contrary to agency regulations that require clear error review for findings of fact.  See 8 C.F.R. § 1003.1(d)(3)(i).

As a Court of Appeals, we operate under the familiar rule that when a district court makes a finding of fact or exercises discretion conferred upon it, we must routinely defer

to the district court in these matters on appeal. We will overturn a district court's finding of fact only if it is "clearly erroneous" and its exercise of discretion only if the discretion has been "abused." See, e.g., United States v. Agudelo, 414 F.3d 345, 348 (2d Cir. 2005) (findings of fact); United States v. Rigas, 490 F.3d 208, 238 (2d Cir. 2007) (exercise of discretion). While the scope of the BIA's review of findings of fact on appeal from a ruling of an IJ is similar to ours when reviewing factual findings of a district judge, the BIA's standard of review of discretionary decisions by an IJ is quite different from ours:

> (i) . . . Facts determined by the immigration judge including findings as to credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous.
>
> (ii) The Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges de novo.

8 C.F.R. §§ 1003.1(d)(3)(i)&(ii) (emphasis added). The discretionary portion of an IJ's decision is thus reviewed by the BIA as though it were deciding the issue in the first instance.

Noble argues that the BIA erred as a matter of law by applying de novo review under subsection (ii) to overturn the IJ's finding of fact that Noble had been rehabilitated. Because it was a finding of fact, Noble contends, the BIA could do so properly only under subsection (i) and only if it concluded that the finding was clearly erroneous. Noble frames his argument as a constitutional claim of a violation of his due process rights.

-10-

Pet. Br. at 15. To determine whether we have jurisdiction, however, we must "study the arguments asserted . . . [and] determine, regardless of the rhetoric employed in the petition, whether it merely quarrels over the correctness of the factual findings or justification for the discretionary choices" made by the BIA. Xiao Ji Chen, 471 F.3d at 329. Although the question of the BIA's proper standard of review does not raise a constitutional issue, Noble's argument is best interpreted to assert that we have jurisdiction because he raises a question of law -- the application by the BIA of a legally erroneous standard of review. See Khan v. Gonzales, 495 F.3d 31, 35 (2d Cir. 2007) ("[E]ven when the petitioner fails to invoke the rhetoric of 'a constitutional claim' or 'question of law,' our analysis of a petitioner's arguments may reveal that they do in fact raise reviewable issues."). Although in some circumstances we do have jurisdiction to review such claims, see Barco-Sandoval v. Gonzales, 496 F.3d 132, 135 n.5 (2d Cir. 2007); Khan, 495 F.3d at 34, here, no matter how it is framed, Noble's argument mischaracterizes the nature of the agency's decision. The BIA's conclusion regarding Noble's section 212(c) application was discretionary and, therefore, beyond our jurisdiction.

The IJ, in her decision, referred to "evidence of rehabilitation," IJ Decision at 9, and commented on Noble's "willingness to continue his progress toward a drug-free and crime-free lifestyle." Id. at 8. The IJ concluded that [Noble] ha[d] finally demonstrated good efforts at rehabilitation." Id.

-11-

The role of the BIA was to consider Noble's rehabilitation, which the IJ had examined, and weigh it with and against other relevant factors[3] in order to render an informed discretionary decision as to whether Noble should be permitted to stay. See Restrepo v. McElroy, 369 F.3d 627, 634 (2d Cir. 2004) ("In evaluating a section 212(c) application, an immigration judge must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf.") (internal quotation marks and citation omitted). The BIA did just that. It concluded, "[W]hen we weigh the[] [favorable] equities against the adverse factor of his very serious criminal history and our reservations as to his rehabilitation we are constrained to find that a favorable exercise of discretion would not be in the best interests of the United States." BIA Opinion at 3. To be sure,

---

[3]

> Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character (e.g., affidavits from family, friends, and responsible community representatives).

Matter of Marin, 16 I. & N. Dec. 581, 584-585 (BIA 1978).

the BIA also expressed its view that "[t]he fact that the respondent has continued to commit crimes after the commencement of these proceedings and after receiving explicit warnings from the Immigration Judge about the potential consequences of such conduct frankly leaves us with very serious doubts as to the authenticity of the respondent's rehabilitation." Id. But the BIA made this observation while addressing "the sole question on appeal" -- "whether [Noble] merits section 212(c) relief in the exercise of discretion . . . ." Id. at 1. It was thus exercising its discretion by balancing the equities, including rehabilitation, which, at least in this case, we do not have the power to review.

In Wallace v. Gonzales, 463 F.3d 135 (2d Cir. 2006) (per curiam), we addressed an argument similar to that which Noble makes here. There, the IJ had granted the applicant's petition under 8 U.S.C. § 1255, which allows the status of aliens meeting certain criteria to "be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence." Id. § 1255(a). After balancing the equities, the BIA overturned the IJ's decision that the waiver should be granted. Wallace, 463 F.3d at 137. The Board concluded that the IJ "erred in finding adequate evidence of rehabilitation which would outweigh the negative criminal history," id., because "although 'the evidence does suggest that [Wallace] has attempted to rehabilitate himself while incarcerated, we cannot find that this

-13-

outweighs the seriousness of his conviction for robbery and other indications of criminal activity.'" Id. at 137-38 (quoting the BIA's opinion in Wallace). Wallace argued on appeal "that the BIA exceeded its authority under federal regulations when it rejected the IJ's finding that Wallace had demonstrated rehabilitation." Id. at 138.

We declined to consider Wallace's "argu[ment] that the BIA violated 8 C.F.R. § 1003.1(d)(3)[(i)] when it reversed the IJ's conclusion that Wallace merited an adjustment of status because the factual findings of an IJ may be reversed only when the Board deems them 'clearly erroneous.'" Id. at 140. "The BIA did not reject any factual determination of the IJ with respect to Wallace's 'rehabilitation.'" Id. at 141. Instead, we concluded, the BIA had merely "recounted the IJ's findings and concluded that the IJ incorrectly exercised his discretion in granting Wallace an adjustment of status." Id. In doing so, we noted that "[a]lthough any reversal by the BIA of an IJ's discretionary determination must involve consideration of the underlying facts, a review of the factual record by the BIA does not convert its discretionary determination as to whether a petitioner warrants an adjustment of status into improper factfinding." Id.

We do not discount the possibility, of course, that in another case, the BIA's declining properly to defer to factual findings by the IJ regarding rehabilitation as required by section 1003.1(d)(3)(i) will amount to an error of law. But

-14-

here, we think, as in Wallace, the BIA was engaging in a recalculation of the equities in declining to grant a discretionary waiver of removal despite the IJ's conclusion to the contrary. In the course of explaining its exercise of that discretion, it noted the nature and extent of Noble's rehabilitation and recorded its view that it had "reservations," i.e., "very serious doubts" about it. BIA Decision at 3. It would have made our review easier had the BIA said that it had "reservations as to the extent of his rehabilitation" rather than "reservations as to his rehabilitation," id., and to have observed, "frankly," that it was left "with very serious doubts as to the degree of [Noble's] rehabilitation" rather than as to its "authenticity." Read in the context of the rest of the BIA's opinion, however, it is clear that these comments were part of the process by which the BIA made a judgment as to whether, in light of Noble's rehabilitation, among other things, the Attorney General's discretion ought to be exercised in his favor.

In its analysis, the BIA agreed with the IJ that Noble had demonstrated unusual or outstanding equities, and further adhered to the IJ's credibility determination, particularly as it pertained to Noble's expression of remorse. But unlike the IJ, the BIA did not think that Noble's positive equities, in conjunction with any "evidence of rehabilitation," IJ Decision at 9, sufficiently outweighed the seriousness of his criminal history to warrant the exercise of its favorable discretion. We have no authority to review that discretionary determination.

-15-

**CONCLUSION**

For the foregoing reasons, the petition is dismissed.