19-2044, 21-6533
*Hernandez v. Garland*

# United States Court of Appeals
## for the Second Circuit

---

August Term 2022
Argued: September 12, 2022
Decided: April 21, 2023

Nos. 19-2044, 21-6533

---

OSCAR HERNANDEZ, AKA JORGE CORRIENTEZ PEREZ,

*Petitioner*,

v.

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,

*Respondent.*

---

On Appeal from the Board of Immigration Appeals

---

Before:   WALKER, POOLER, and PARK, *Circuit Judges.*

Petitioner Oscar Hernandez appeals from the denial of his application for cancellation of removal by the Board of Immigration Appeals ("BIA").   After an immigration judge ("IJ") initially granted cancellation, the BIA reversed, determining that Hernandez was statutorily eligible for cancellation but did not merit a favorable exercise of the agency's discretion in light of his criminal history—namely, his two convictions for domestic violence.   Hernandez

objects to the BIA's characterization of his criminal history, arguing that it impermissibly engaged in factfinding and reevaluated the IJ's factual findings. But the BIA did not second-guess the IJ's factual findings or find facts of its own—it conducted a *de novo* reweighing of the equities based on the facts found by the IJ. The BIA thus properly exercised its discretion to deny cancellation of removal, and we **DISMISS** the petition because we lack jurisdiction to review that discretionary decision.

Judge Pooler dissents in a separate opinion.

--------

MARIA DA SILVA, Skadden, Arps, Slate, Meagher & Flom LLP and Affiliates, New York, N.Y. (Colm McInerney, Skadden, Arps, Slate, Meagher & Flom LLP and Affiliates, New York, N.Y.; Massiel Leiva, Skadden, Arps, Slate, Meagher & Flom LLP and Affiliates, Washington, D.C.; Julie Dona, Julia Timerman, The Legal Aid Society, New York, N.Y., *on the brief*), *for Petitioner*.

ALANNA THANH DUONG, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C. (Brian Boynton, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C.; Jessica A. Dawgert, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., *on the brief*), *for Respondent*.

--------

PARK, *Circuit Judge*:

Petitioner Oscar Hernandez appeals from the denial of his application for cancellation of removal by the Board of Immigration

Appeals ("BIA").   After an immigration judge ("IJ") initially granted cancellation, the BIA reversed, determining that Hernandez was statutorily eligible for cancellation but did not merit a favorable exercise of the agency's discretion in light of his criminal history—namely, his two convictions for domestic violence.   Hernandez objects to the BIA's characterization of his criminal history, arguing that it impermissibly engaged in factfinding and reevaluated the IJ's factual findings.   But the BIA did not second-guess the IJ's factual findings or find facts of its own—it conducted a *de novo* reweighing of the equities based on the facts found by the IJ.   The BIA thus properly exercised its discretion to deny cancellation of removal, and we dismiss the petition because we lack jurisdiction to review that discretionary decision.

## I.   BACKGROUND

Hernandez, a Mexican citizen married to a U.S. citizen, last entered the United States in 2001.   On December 20, 2016, the Department of Homeland Security served Hernandez with a notice to appear alleging that he was removable because he was present in the United States without being admitted or paroled.   The notice to appear followed Hernandez's second arrest for domestic violence, which was the latest of several arrests and convictions in Hernandez's criminal history.

A.   Hernandez's Criminal History

Hernandez's most serious criminal convictions both involve domestic violence.   First, Hernandez pleaded guilty to third-degree assault in 2009 after his former partner reported that he had beaten her "numerous times with a belt about her body, causing welts, swelling, bruising and scratches to the back of her legs, thighs and

3

wrist." App'x at 380. His partner was hospitalized for her injuries. Hernandez was subjected to an order of protection that required him to avoid coming within one hundred yards of or communicating with his partner. The court also ordered Hernandez to participate in domestic violence prevention classes.

Second, Hernandez pleaded guilty to disorderly conduct after his wife accused him of domestic violence in 2016. His wife reported two different incidents. On April 15, 2016, she told police that Hernandez had "pushed her towards the wall" during an argument, "causing [her] to fall on the ground." App'x at 365. Then Hernandez "kick[ed] [her] about her body," "punched her in the chest multiple times," and strangled her. *Id.* The attack caused "substantial pain," "bruises," and "redness to the . . . neck." *Id.*

Hernandez's wife also told the police that during a different argument on October 10, 2016, Hernandez "threw his cell phone towards [her] face, striking [her] under the eye and causing substantial pain, bruises and swelling." *Id.* The altercation occurred in front of the couple's two-year-old daughter. After his conviction in 2016, Hernandez was again subjected to an order of protection in favor of his wife and children, which prevented him from seeing his children for a time.

In addition to his domestic violence convictions, Hernandez has been convicted once for driving under the influence and three times for driving with a suspended license. Hernandez was also once arrested following an argument with an employee at a supermarket.

4

B.    Initial Immigration Proceedings

Following his conviction in 2016, the Department of Homeland Security sought to remove Hernandez. Hernandez conceded his removability but applied for cancellation of removal. The IJ denied Hernandez's application, finding that his 2009 domestic-violence conviction was a crime of moral turpitude that made him statutorily ineligible for relief. That conviction, however, was subsequently vacated and substituted with a conviction for attempted reckless assault. As a result, the BIA vacated the IJ's decision.

On remand, the IJ granted Hernandez's application for cancellation of removal. The IJ found that Hernandez was statutorily eligible for cancellation of removal and merited such relief as a matter of discretion. The IJ referenced Hernandez's explanation of the 2016 domestic-violence conviction at his hearing. Specifically, Hernandez testified that his wife had "confronted [him]" with "a picture on his cellphone from some co-workers that were having a 'stripper show' at the restaurant they work[ed] at." *Id.* at 229. They had an argument during which Hernandez "thr[ew] his cellphone, but it did not hit [his wife]." *Id.* at 230. Hernandez's wife told him that he "was going to regret it." *Id.* "[T]he next morning[,] [he] woke up to two police officers at his house who then arrested him." *Id.*

The IJ also cited an affidavit from Hernandez's wife in support of his application for cancellation of removal. The affidavit described the 2016 arrest as follows:

> In October 2016, I told the police that Oscar harmed me because I was very jealous and angry about a picture I saw of him with some dancers. But Oscar has never

5

hurt me or our children and we desperately want him to be able to live with us again.  He is never violent and when I lose my temper, he always tries to walk away until I am more calm.

*Id.* at 430.  Hernandez's wife did not testify.  The IJ found that Hernandez "testified credibly" without elaboration.  *Id.* at 234.  The IJ concluded that "based on the totality of the circumstances, the positive equities outweigh the negative factors" such that Hernandez "merit[ed] a favorable exercise of discretion."  *Id.* at 238.  The IJ found that "[d]espite his criminal history, [Hernandez] . . . made ongoing efforts to rehabilitate himself . . . [and] demonstrated sincere remorse for his arrests."  *Id.*

C.    BIA Proceedings

The Department of Homeland Security appealed the IJ's decision to grant cancellation of removal.  The BIA explained that it "review[ed] the findings of fact, including the determination of credibility . . . under the 'clearly erroneous' standard . . . [and] all other issues, including issues of law, discretion, or judgment, under the de novo standard."  Special App'x at 7 (citations omitted).  The BIA then found "upon . . . de novo review" that Hernandez did not "warrant[] relief in the exercise of discretion."  *Id.* at 10.

The BIA based its decision on Hernandez's criminal history.  It explained that "[Hernandez's] six criminal convictions, and the circumstances surrounding those convictions, are extremely serious," especially because two "occurred after [Hernandez] exhibited violent conduct toward his spouse, resulting in protective orders."  *Id.* After the 2009 arrest, Hernandez "continued to engage in violent behavior," as demonstrated by "his most recent arrest in 2016, which

6

included abusive behavior toward his spouse." *Id.* The BIA "d[id] not find" Hernandez's explanation of the 2016 incident "convincing" because Hernandez "admitted . . . that he threw his phone at his wife, but did not think the phone would harm her," and "plead[ed] guilty to, and was convicted of, disorderly conduct." *Id.* The BIA also discounted Hernandez's wife's affidavit because it "d[id] not claim that [she] misrepresented [Hernandez's] conduct to the police, which resulted in his arrest." *Id.* at 11.

Hernandez moved for reconsideration, arguing that the BIA "engaged in impermissible fact finding" and found certain of the IJ's factual findings "clearly erroneous" without "explain[ing] why." App'x at 17. Specifically, Hernandez argued that the BIA's descriptions of his 2016 arrest as involving "abusive behavior," "violent conduct toward his spouse," or "violent behavior" constituted impermissible factfinding or reversal of the IJ's findings of fact absent clear error. *Id.* at 29 (citation omitted). Hernandez also pointed to the BIA's statement that it did not find Hernandez's explanation of the incident "convincing," *id.* at 35 (citation omitted), and its characterization of his wife's affidavit as not admitting deception, *id.* at 37.

The BIA denied the motion for reconsideration. It "disagree[d] with [Hernandez's] characterization of [its] decision as engaging in fact-finding," and explained that its decision "weigh[ed] [Hernandez's] equities with his negative factors, *taking into account the Immigration Judge's factual findings regarding [Hernandez's] criminal history.*" Special App'x at 3 (emphasis added). In particular, the BIA explained that it had relied on Hernandez's "admi[ssion]" that he "thr[ew] his phone at his wife when he was last

7

arrested," as well as his guilty plea to "disorderly conduct," in weighing the 2016 arrest. *Id.* at 3 n.1.

Hernandez timely petitioned this Court for review.[1]

## II. DISCUSSION

### A. Legal Standards

"[C]ancellation of removal is a two-step process," requiring both "statutory eligibility" and the agency's favorable exercise of its "discretion." *Rodriguez v. Gonzales*, 451 F.3d 60, 62 (2d Cir. 2006). No party contests Hernandez's statutory eligibility on appeal, so only the second step is at issue. "[U]nder BIA precedent, the agency regularly balances many positive and adverse factors in deciding how to exercise its discretion." *Argueta v. Holder*, 617 F.3d 109, 113 (2d Cir. 2010). "Among the factors deemed adverse to an alien is the existence of a criminal record." *Id.* (quoting *In re C-V-T*, 22 I. & N. Dec. 7, 11 (B.I.A. 1998)) (alterations omitted). "[A]ctual granting of relief is not a matter of right under any circumstances but rather . . . a matter of grace." *Rodriguez*, 451 F.3d at 62 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 307-08 (2001)) (alterations omitted).

When reviewing an IJ's decision, the BIA reviews factual findings for clear error and "questions of law, discretion, and judgment and all other issues . . . de novo." 8 C.F.R. § 1003.1(d)(3). The BIA should "not engage in factfinding in the course of deciding

---

[1] Hernandez initially petitioned for review of the BIA's decision before the BIA had resolved his motion for reconsideration. We stayed the case pending the BIA's decision. After the BIA denied the motion, Hernandez petitioned for review again. We consolidated the petitions and now resolve both.

8

cases, except that the Board may take administrative notice of facts that are not reasonably subject to dispute." *Id.*

The BIA may reconsider an IJ's discretionary decisions *de novo*. "In determining whether established facts are sufficient to meet a legal standard, the Board is entitled to weigh the evidence in a manner different from that accorded by the Immigration Judge." *Alom v. Whitaker*, 910 F.3d 708, 712 (2d Cir. 2018) (cleaned up); *see also Hui Lin Huang v. Holder*, 677 F.3d 130, 138 (2d Cir. 2012) (noting that the weight of the evidence "lies largely within the discretion of the agency" (quoting *Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 342 (2d Cir. 2006)) (alterations omitted)). But "if incomplete findings of fact are entered by an IJ and the BIA cannot affirm the Immigration Judge's decision on the basis that he or she decided the case and if the dispositive issue is not sufficiently clear," the BIA should "remand to the IJ for further fact-finding." *Padmore v. Holder*, 609 F.3d 62, 67 (2d Cir. 2010) (cleaned up).

Our jurisdiction to review the denial of cancellation of removal is limited to constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(B)(i), (D); *accord Barco-Sandoval v. Gonzales*, 516 F.3d 35, 39-40 (2d Cir. 2008). "[W]e are obliged to dismiss any claim . . . that 'essentially disputes the correctness of the agency's factfinding or the wisdom of its exercise of discretion.'" *Alvarez v. Garland*, 33 F.4th 626, 637 (2d Cir. 2022) (quoting *Barco-Sandoval*, 516 F.3d at 39) (alterations omitted). But we may review "a claim that the agency applied 'a legally erroneous standard' in denying discretionary relief," *id.* (quoting *Barco-Sandoval*, 516 F.3d at 39), as long as it is not an "insubstantial or frivolous . . . attempt to overcome a lack of jurisdiction" by rhetoric alone, *Argueta*, 617 F.3d at 113 (cleaned up).

9

"[W]hen analysis of the arguments raised by the petition for judicial review reveals that they do not in fact raise any reviewable issues, the petitioner cannot overcome this deficiency" merely by invoking "the rhetoric of a 'constitutional claim' or 'question of law.'" *Xiao Ji Chen*, 471 F.3d at 329-30; *accord Barco-Sandoval*, 516 F.3d at 39. Otherwise, "legal alchemy" alone could generate a reviewable question. *Guyadin v. Gonzales*, 449 F.3d 465, 468 (2d Cir. 2006).

B.     Analysis

Hernandez argues that the BIA conducted its own factfinding and impermissibly overruled the IJ's factual findings without applying the clear-error standard.     Hernandez points to four statements by the BIA: (1) it "d[id] not find [Hernandez's] explanation" of the 2016 incident "convincing," (2) Hernandez "admitted . . . that he threw his phone at his wife," (3) Hernandez "engage[d] in . . . harmful conduct" and "violent" or "abusive behavior," and (4) Hernandez's wife "d[id] not claim that [she] misrepresented [his] conduct to the police."     App'x at 115-16.     We disagree and conclude that the BIA did nothing more than reweigh the evidence.

10

1.     *Hernandez's Unconvincing Explanation*

Hernandez's primary argument is that the BIA's description of his "explanation" of the 2016 arrest as not "convincing" impermissibly overruled the IJ's decision to credit his testimony. Appellant's Br. at 22 (citation omitted).   But the BIA's use of the word "convincing" does not mean that it questioned Hernandez's credibility.

The parties' arguments turn on an ambiguity in the BIA's initial decision.   "Convincing" means "[c]ausing one to believe that something is true or right; persuasive."   *Convincing*, *Black's Law Dictionary* (11th ed. 2019).   Hernandez argues that the BIA meant that his explanation that the 2016 arrest was based on nonviolent conduct was not convincing (*i.e.*, truthful).   But according to the government, the BIA meant that it was not convinced (*i.e.*, persuaded) that Hernandez warranted discretionary relief.

When the BIA's language is ambiguous, we read the relevant language "in the context of the rest of the BIA's opinion."   *Noble v. Keisler*, 505 F.3d 73, 80 (2d Cir. 2007).   Here, the context clarifies that the BIA did not overturn the IJ's factual findings.

First, the BIA "adhered to the IJ's credibility determination" rather than questioning it.   *Id.*   The BIA did not mention, much less rely on, the serious allegations surrounding the 2016 arrest that Hernandez denied.   These included allegations that Hernandez pushed, kicked, punched, and strangled his wife in one incident, then threw a cell phone at her with such force that it caused bodily injury in another.   If the BIA had credited these factual allegations, it would have relied on them as compelling evidence of his unfitness for discretionary relief.   But it did not.   Instead, it cited only aspects of

11

Hernandez's conduct that the IJ referenced and that Hernandez affirmatively admitted—*i.e.*, his throwing of his phone, guilty plea, and protective order. *Compare Wallace v. Gonzalez*, 463 F.3d 135, 141 (2d Cir. 2006) ("declin[ing] to construe [a] statement as an impermissible finding of facts" when "[t]he BIA did not reject any factual determination of the IJ" but instead "recounted the IJ's findings"), *with Padmore*, 609 F.3d at 68 (holding that the BIA relied on "impermissible appellate factfinding" when it "reverse[d] the IJ . . . based on disputed material facts with respect to which the IJ reached no resolution").

Second, the context clarifies that the BIA doubted Hernandez's discretionary merit, not his truthfulness. The BIA began by stating that "upon [its] de novo review, [it did] not agree with the Immigration Judge that [Hernandez] warrant[ed] relief in the exercise of discretion." Special App'x at 10. It concluded that "[i]n light of the foregoing, [it did] not agree . . . that [Hernandez] demonstrated sufficient rehabilitation and remorse" to "warrant relief in the exercise of discretion." *Id.* at 11. Between those statements, the BIA weighed many of the equities, including Hernandez's explanation that did not convince the BIA that the equities weighed in his favor. *See id.* at 10-11.[2] The context thus included a discussion of the factors relevant to discretionary relief, not credibility, which indicates that the object of the BIA's doubt was the former. *Cf. Noble*, 505 F.3d at 79-80 (affirming because an ambiguous statement, in context, was

---

[2] In the same three-paragraph discussion, the BIA noted Hernandez's five other criminal convictions (particularly the disturbing facts of his 2009 conviction), his decision to turn himself in following the 2009 incident, his efforts to rehabilitate himself by seeking substance abuse treatment, his familial ties, and his employment history.

merely "part of the process by which the BIA" permissibly weighed equities, rather than finding facts).

Third, the BIA resolved any remaining doubt by explaining the basis for its decision when denying Hernandez's motion for reconsideration. The BIA responded to the same arguments Hernandez raises now on appeal by "disagree[ing] with [his] characterization of [the BIA's] decision." Special App'x at 3. It explained that it "exercised [its] de novo review authority to determine whether [Hernandez] . . . merit[ed] relief in the exercise of discretion" rather than "engaging in fact-finding." *Id.* As evidence, the BIA noted that its decision relied only on the aspects of the 2016 incident that Hernandez admitted. *Id.* at 3 n.1. Of course, the BIA must not only state the correct standard, but apply it. *See Chen v. Bureau of Citizenship & Immigr. Servs.*, 470 F.3d 509, 515 (2d Cir. 2006) (remanding when "the BIA used the phrase 'clearly erroneous' in its opinion" but "in fact" assessed credibility *de novo*). But when there is genuine ambiguity, the BIA's clarification is helpful. *See Noble*, 505 F.3d at 79-80 (crediting the BIA's explanation of its own decision); *Wallace*, 463 F.3d at 140-41 (same).

We conclude that Hernandez's argument rests on "mischaracteriz[ations]" of "the nature of the agency's decision" to generate a legal issue, and thus lies "beyond our jurisdiction." *Noble*, 505 F.3d at 78. "[A] review of the factual record by the BIA does not convert its discretionary determination as to whether a petitioner warrants discretionary relief into improper factfinding." *Padmore*, 609 F.3d at 68 (quoting *Wallace*, 463 F.3d at 141) (alterations omitted).

### 2. *Hernandez's Cell Phone*

Hernandez also argues that the BIA erred by stating that he had "admitted . . . that he threw his phone at his wife," App'x at 115, when the IJ's finding was "simply" that he "threw the phone," Appellant's Br. at 24. But the BIA did not so err, and if it had, any error would be harmless.

The BIA drew a logical inference from the IJ's factfinding and Hernandez's own testimony. According to the IJ, Hernandez "testified that he did throw his cellphone, but it did not hit" his wife. App'x at 230. In his cross-examination, Hernandez said that he "threw the phone, but . . . [his wife] didn't even catch the phone or touch the phone." *Id.* at 326. He also told the police that he "didn't think [the phone] was going to hit [his wife]." *Id.* at 327. These statements make sense only if—at a minimum—Hernandez threw his phone in his wife's general direction. If he had thrown his phone at a wall or to the ground, he would have said so. We see no error in the BIA's drawing this logical inference.

Even if the BIA's description were wrong, any inconsistency would be inconsequential. "[T]he agency does not commit an 'error of law' every time an item of evidence . . . is described with imperfect accuracy." *Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009) (contrasting evidence that is "totally overlooked" or "seriously mischaracterized"); *accord Banegas Gomez v. Barr*, 922 F.3d 101, 110 (2d Cir. 2019). Hernandez's argument amounts to a complaint that the BIA used an incorrect preposition—*i.e.*, throwing his phone "at" his

wife, instead of "around"—and does not bring his petition within our jurisdiction to consider questions of law.[3]

Moreover, "[m]inor errors . . . do not require remand" when remand "would be pointless or futile, such as where there is an alternative and sufficient basis for the result, [or] the error is tangential to non-erroneous reasoning." *De La Rosa v. Holder*, 598 F.3d 103, 108 (2d Cir. 2010). "The general rule is that the Court must be confident that the agency would reach the same result upon a reconsideration cleansed of errors." *Id.* (cleaned up). Here, it is clear that the BIA would not reevaluate its weighing of the equities based on the correction that Hernandez proposes, as it already explained in denying his motion for reconsideration. The BIA found the 2016 incident troubling because of Hernandez's throwing of a phone during an argument, guilty plea to disorderly conduct, and subjection to a protective order—not just the direction in which the phone was thrown. *See* Special App'x at 10-11. In addition, the BIA considered other factors, including Hernandez's previous "extremely serious" convictions. *Id.* at 10.

3.     *Hernandez's Harmful, Violent, or Abusive Conduct*

Hernandez next argues that the BIA incorrectly characterized the 2016 incident as reflecting "harmful," "violent," or "abusive" conduct. Appellant's Br. at 24-27. But the record supported the BIA's characterization. Taking only the allegations to which Hernandez admitted—which, again, were the only allegations on

---

[3] *See, e.g., Banegas Gomez*, 922 F.3d at 110; *Medrano Medrano v. Garland*, 852 F. App'x 586, 587-89 (2d Cir. 2021); *Roldan v. Barr*, 820 F. App'x 77, 78-79 (2d Cir. 2020); *Barros v. Barr*, 797 F. App'x 635, 638-39 (2d Cir. 2020).

which the BIA relied—Hernandez threw his phone in an argument with his wife, leading to his arrest, his guilty plea to a charge, and his subjection to a protective order that prevented him from seeing his children. This conduct was undoubtedly "harmful," and the BIA could permissibly view it as abusive and violent, especially in light of Hernandez's history of domestic violence. Special App'x at 10.

### 4. *Hernandez's Wife's Statement*

Finally, Hernandez argues that the BIA erred by noting that his wife did "not claim that [she] misrepresented [his] conduct to the police." *Id.* at 11. But this was correct. Her affidavit stated that she reported Hernandez to the police "because [she] was very jealous," but that Hernandez "never hurt [her] or [their] children" and "is never violent." App'x at 430. Those statements are in tension with her police report, but they do not admit deceiving the police. The BIA merely observed that that failure diminished the persuasive value of the affidavit, especially because Hernandez had already admitted to some of the conduct that the police report alleged. *See* Special App'x at 11. The BIA has discretion to evaluate the weight of the evidence, which includes the discretion to consider both its strengths and weaknesses. S*ee Hui Lin Huang*, 677 F.3d at 138.

### III. CONCLUISON

Hernandez's arguments attempt to use the "nomenclature" of a legal claim to obtain review of a "mere quarrel over the . . . discretionary choices made by the agency, a quarrel that we lack

jurisdiction to review." *Barco-Sandoval*, 516 F.3d at 42 (cleaned up). We thus dismiss his petitions.[4]

---

[4] Respondent clarified at oral argument that he seeks dismissal, not just denial, of Hernandez's petitions. We conclude that the BIA did not err in reversing the IJ's grant of cancellation of removal, so we also conclude that the BIA did not err in denying Hernandez's motion for reconsideration.

POOLER, *Circuit Judge*, dissenting:

Standards matter. A standard of review is the essential mechanism that defines an appellate court's proper role in reviewing the record presented. All appellate courts must adhere to the proper standard of review. The Board of Immigration Appeals ("BIA" or "the Board") is no exception. Here, the BIA applied a standard that substantially deviated from the clear error standard and improperly made factual findings that contradicted those made by the Immigration Judge ("IJ"). The BIA's failure to adhere to the proper standard is "the type of error that requires remand." *De La Rosa v. Holder*, 598 F.3d 103, 108 (2d Cir. 2010). Accordingly, I respectfully dissent.

This Court lacks jurisdiction to review purely discretionary decisions by the BIA, *see* 8 U.S.C. § 1252(a)(2)(B)(ii), but we retain jurisdiction over "constitutional claims or questions of law," *Noble v. Keisler*, 505 F.3d 73, 77 (2d Cir. 2007) (quoting § 1252(a)(2)(D)). When reviewing decisions, "[t]he Board will not engage in de novo review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous." 8 C.F.R. §

1

1003.1(d)(3)(i). "[W]hen the BIA engages in factfinding in contravention of 8 C.F.R. § 1003.1(d)(3)(iv), it commits an error of law, which [the Court has] jurisdiction to correct." *Padmore v. Holder*, 609 F.3d 62, 67 (2d Cir. 2010); *see also Rizal v. Gonzales*, 442 F.3d 84, 89 (2d Cir. 2006) (explaining that the Court will vacate BIA decisions "that result from flawed reasoning or the application of improper legal standards"). Though the BIA "may review questions of law" and "all other issues" on appeal de novo, *see* § 1003.1(d)(3)(ii), it is explicitly barred from "engag[ing] in factfinding in the course of deciding cases" aside from taking "administrative notice of facts that are not reasonably subject to dispute," § 1003.1(d)(3)(iv)(A).

Here, the BIA recited the precise legal standard at the beginning of its May 2019 decision. Special App'x at 7 (citing § 1003.1(d)(3)). But we do not simply "rely on the Board's invocation of the clear error standard; rather, when the issue is raised, [the Court's] task is to determine whether the BIA faithfully employed the clear error standard or engaged in improper de novo review of the IJ's factual findings." *Rodriguez v. Holder*, 683 F.3d 1164, 1170 (9th Cir. 2012); *see also Chen v. Bureau of Citizenship & Immigr. Servs.*, 470 F.3d 509, 514 (2d Cir. 2006) (noting that despite "cit[ing] the proper legal standard at the outset of its decision, [the BIA]

2

failed to apply this deferential standard of review"). Despite its invocation of the clear error standard, the BIA did not ultimately apply this standard of review to Oscar Hernandez's case. Merely reciting the standard does not transform the BIA's impermissible factfinding into a permissible exercise of discretion. Such lip service should not suffice.

The majority opinion characterizes the BIA's impermissible factfinding as a simple "de novo reweighing of the equities based on the facts found by the IJ." Maj. Op. at 3. That is not the case. Without identifying any of the IJ's findings as clearly erroneous, the BIA implicitly rejected the IJ's factual findings and substituted the facts found by the IJ with its own factual findings. If the BIA rejects the IJ's findings, we expect it to "supply cogent reasons for its rulings," which the BIA failed to provide. *See Lin v. Lynch*, 813 F.3d 122, 129 (2d Cir. 2016).

The BIA completely disregarded the IJ's credibility determination when it concluded, contrary to the IJ's findings, that it "d[id] not find [Hernandez's] explanation convincing" regarding the circumstances of his 2016 arrest. Special App'x at 10. This divergence in characterization of the 2016 incident was central to the BIA's decision. In its attempt to parse out the definition of "convincing," the majority claims the BIA did not overturn the IJ's factual findings, arguing the

3

BIA's intended use of the word meant it was not "persuaded" by Hernandez's explanation, not that his testimony was not "truthful." Maj. Op. at 11. This is an unconvincing distinction. Next, the majority suggests the BIA doubted that Hernandez warranted discretionary relief, not the truthfulness of his testimony. *Id*. at 12. That clarification, however, does not do much to support the majority's argument. The BIA's "de novo" reconsideration of whether Hernandez merited a favorable exercise of discretion was premised on its factual determination that he had "continued to engage in violent behavior" following his first arrest and conviction in 2009. Special App'x at 10. The only evidence cited for this determination was that Hernandez's "most recent arrest in 2016 . . . included abusive behavior toward his spouse"—a characterization directly at odds with the IJ's findings. Special App'x at 10.

During Hernandez's hearing, the IJ spent significant time probing the allegations of the 2016 incident that resulted in the disorderly conduct violation. In his testimony, Hernandez vigorously disputed harming his wife, and testified that his lawyer advised him to plead to disorderly conduct, "whether it's true or it's not true," so that he could return home. App'x at 325. The IJ probed Hernandez's testimony, posing numerous follow-up questions about the

4

underlying allegations. When the IJ asked specifically about the allegation that Hernandez threw his phone at his wife's face, Hernandez acknowledged throwing the phone in frustration during the dispute. But he consistently maintained he did not intend for the phone to hit her, and the phone did not, in fact, touch her. After considering this testimony, as well as Hernandez's demeanor, candor, and responsiveness, the IJ noted Hernandez's "consisten[cy] on direct and cross-examination" and found him to be credible. App'x at 234. In summarizing the 2016 incident, the IJ wrote, "[Hernandez] testified that he did throw his cellphone, but it did not hit her." App'x at 230.

Regarding the 2016 incident, the BIA engaged in prohibited fact-finding by adding additional words and making unsubstantiated logical leaps when it stated that Hernandez "admitted on cross-examination that he threw his phone *at* his wife." Special App'x at 10 (emphasis added). The BIA inappropriately added a pivotal and directional word: "at." The majority maintains that the BIA "drew a logical inference," and that even if an "incorrect preposition" was used, "any inconsistency would be inconsequential." Maj. Op. at 14. However, the BIA's insertion of the preposition serves as definitive proof that the BIA made its own determination about Hernandez's conduct and credibility. *See De La Rosa*,

5

598 F.3d at 107 (stating that the BIA "appears to have made its own factual findings" where its "characterization of facts deriving from the evidentiary record is demonstratively at odds with factual findings made by the IJ, including several directly inconsistent findings").

In addition to its characterization of the 2016 incident, the BIA also misconstrued a letter that Hernandez's wife, Johana Hernandez Vasquez, submitted in support of her husband's character to the IJ. Her statement stated:

> I told the police that Oscar harmed me because I was very jealous and angry about a picture I saw of him with some dancers. But Oscar *has never hurt me* or our children and we desperately want him to be able to live with us again. He is never violent and when I lose my temper, he always tries to walk away until I am more calm.

App'x at 430 (emphasis added). The BIA noted that "while the respondent's wife wrote a statement in support of the respondent's character, she does not claim that [she] misrepresented the respondent's conduct to the police, which resulted in his arrest." Special App'x at 11. The court documents for the incident stated that Hernandez "pushed her towards the wall," "punched her in the chest multiple times," and "placed his hands on [Hernandez Vasquez's] neck and applied pressure." App'x at 365. Therefore, the BIA's statement that Hernandez Vasquez did not "misrepresent" the conduct she had reported completely mischaracterizes what her statement said. *See* Special App'x at 11. Hernandez

6

Vasquez's written statement that "Oscar has never hurt me" serves as a complete retraction of her past statement to the police. App'x at 430.

The BIA is not permitted to substitute its own view of the facts by filling in gaps, thereby rejecting the IJ's factual findings without overtly doing so. By disregarding the IJ's credibility determination without holding it to be clearly erroneous, the BIA exceeded the bounds of its appropriate review. *See Chen*, 470 F.3d at 514. The majority asserts that the BIA properly relied on the IJ's factual findings and merely "conducted a de novo reweighing of the equities." Maj. Op. at 3. It argues that the BIA is permitted to weigh the impact of the evidence differently from the IJ. *See* Maj. Op. at 9. However, as support for the BIA's finding that Hernandez's "violent conduct" and "abusive behavior" gave rise to his 2016 disorderly conduct violation, the BIA did not cite to the IJ's decision, but rather to allegations that the IJ found credibly refuted. Special App'x at 10. The BIA even accepted uncorroborated statements from the 2016 disorderly conduct violation charging documents as fact. *See Padmore*, 609 F.3d at 69 (articulating that the IJ may not base denial "upon the assumption that the facts contained in [charging] documents are true"). But the Department of Justice has explained that immigration judges—not the BIA—"are generally in the best position to

7

make determinations as to the credibility of witnesses," as they are "aware of variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54,878, 54,889 (Aug. 26, 2002) ("BIA Procedural Reforms").

The majority's argument works better in theory than in application. Had the BIA rested its reweighing of the factors only on facts found by the IJ—for instance, the fact that Hernandez has six criminal convictions—there would be no issue. The problem is that the BIA denied discretionary relief not because Hernandez had been convicted, but because it characterized the *facts* underlying those convictions—specifically, its determination that the 2016 arrest "included abusive behavior" and "violent conduct;" that the IJ's "accept[ance of Hernandez's] explanation that he peacefully went to bed and woke up to the police arresting him" was at odds with Hernandez's "admi[ssion] on cross-examination that he threw his phone at his wife;" that "despite his testimony that he was asleep and did not engage in any harmful conduct, [Hernandez] plead [sic] guilty to, and was convicted of, disorderly conduct;" and that "while [Hernandez Vasquez] wrote a statement in support of [Hernandez's] character,

she does not claim that [she] misrepresented [his] conduct to the police." Special App'x at 10-11. This is not a case where the BIA "adher[ed] to the IJ's credibility determination," yet deviated from the IJ's weighing of the equitable factors. *See Noble*, 505 F.3d at 76; *see also Lin*, 813 F.3d at 127 ("If the [IJ's] account of the evidence is plausible in light of the record viewed in its entirety, the [BIA] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." (internal quotation marks omitted)). The decision whether to credit Hernandez's explanation of the 2016 arrest was for the IJ to make, not the BIA. There is, after all, "a difference between weighing the factual findings of the IJ and reweighing the underlying evidence and testimony behind those factual findings to reach new factual conclusions." *Waldron v. Holder*, 688 F.3d 354, 361 (8th Cir. 2012); *see also* BIA Procedural Reforms, 67 Fed. Reg. at 54,890 ("What have historically been referred to as 'equities' are facts that the respondent establishes in his . . . case, and these factual determinations *by an immigration judge* may be reviewed by the Board only to determine if they are clearly erroneous."). Though the BIA's characterization of Hernandez's 2016 arrest may be reasonable, it does not excuse the BIA from applying the improper standard of review. The BIA is permitted to

9

"consider[] and reject[] the evidence," *Wang v. Bd. of Immigr. Appeals*, 437 F.3d 270, 275 (2d Cir. 2006); what the BIA categorically cannot do is supplement and alter the evidence to suit its reasoning. That is precisely the situation that occurred in this case. For these reasons, I respectfully dissent from the majority opinion.